[No. C063540. Third Dist. Jan. 10, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
CURTIS HOLFORD, Defendant and Appellant.

158

**COUNSEL**

Donn Ginoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine B. Chatman and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MURRAY, J.**—Defendant Curtis Holford, a registered sex offender, was convicted by jury of possession of child pornography (Pen. Code, § 311.11) for his possession of a video file on a hard drive found in his possession. Following a bifurcated hearing, the trial court found that defendant previously had been convicted of a strike offense within the meaning of the "Three

Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12) and that he had also served two prior prison terms (*id.*, § 667.5, subd. (b)). The trial court sentenced defendant to an aggregate term of 14 years in state prison (upper term of six years, doubled pursuant to the Three Strikes law, plus two consecutive one-year terms for the prior prison terms), and imposed other orders.

On appeal, defendant contends (1) the trial court abused its discretion under Evidence Code section 352[1] and also violated his constitutional rights by allowing the jury to view the entire 25-minute video file because, as defendant now contends, there were evidentiary alternatives to showing the jury the entire video file and (2) the trial court further violated his constitutional rights by allowing defendant's daughter to testify about his prior molestation of her.[2]

---

[1] Undesignated statutory references are to the Evidence Code.

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is *substantially outweighed* by the probability that its admission will (a) necessitate undue consumption of time or (b) create *substantial danger* of undue prejudice, of confusing the issues, or of misleading the jury." (Italics added.)

[2] In a footnote, defendant raises the issue of whether amendments to Penal Code former section 4019, effective January 25, 2010, apply retroactively to his pending appeal and entitle him to additional presentence custody credits. However, defendant is required to register as a sex offender and has a prior conviction for a serious felony, which renders him ineligible for additional accrual of credit under that version of the statute. (See Pen. Code, former § 4019, subds. (b) & (c), as amended by Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50, eff. Jan. 25, 2010; Pen. Code, former § 2933, subd. (e)(3), as amended by Stats. 2010, ch. 426, § 1, eff. Sept. 28, 2010.) In a petition for rehearing, defendant raises two new issues: (1) whether the trial court improperly awarded presentence custody credits under Penal Code section 2933.1 rather than Penal Code former section 4019 and (2) whether the October 2011 amendment to Penal Code former section 4019 applies retroactively to this appeal. However, it is "too late to urge a point for the first time in a petition for rehearing, after the case ha[s] been fully considered and decided by the court upon the points presented in the original briefs." (*Prince v. Hill* (1915) 170 Cal. 192, 195 [149 P. 578]; accord, *A. F. Estabrook Co. v. Industrial Acc. Com.* (1918) 177 Cal. 767, 771 [177 P. 848]; *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 276 [68 Cal.Rptr.3d 499]; *People v. Mullens* (2004) 119 Cal.App.4th 648, 669, fn. 9 [14 Cal.Rptr.3d 534]; *CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1429, fn. 1 [101 Cal.Rptr.2d 806]; *Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308 [71 Cal.Rptr.2d 122]; *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 [282 Cal.Rptr. 80]; *People ex rel. Dept. of Public Works v. Mascotti* (1962) 206 Cal.App.2d 772, 779 [23 Cal.Rptr. 846]; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 906, p. 968.) We relax this rule with respect to the first new issue raised in order to forestall a petition for habeas corpus on grounds of ineffective assistance of appellate counsel. Defendant was convicted of possession of child pornography (Pen. Code, § 311.11) and was awarded presentence custody credits under Penal Code section 2933.1, which provides in relevant part that "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." (Pen. Code, § 2933.1, subd. (a).) This was error because defendant's conviction offense is not listed in Penal Code section 667.5, subdivision (c). Accordingly, defendant should have been awarded custody credits under Penal Code, former section 4019,

We hold that defendant has forfeited the arguments he now makes on appeal regarding the video as he did not proffer a *specific excerpt* or any other *specific evidentiary alternative* at trial prior to the video being shown to the jury. Further, any assessment of whether the trial court abused its discretion by admitting the entire video necessarily involves a comparison of the probative value of the evidentiary alternative to the probative value of the entire video and weighing the probative value of each against the purported prejudicial effect. Because defendant failed to identify a specific excerpt or any other specific alternative before the video was shown to the jury, we cannot determine the probative value of such an excerpt or alternative. In the absence of probative value to compare and weigh against any purported prejudicial effect, we cannot find that the trial court abused its discretion. Furthermore, even if we were to consider the recently minted evidentiary alternatives defendant offers on appeal, we would not find that the trial court abused its discretion by allowing the entire video. We further hold that the admission of the entire video did not violate due process.

We also hold that admission of evidence concerning defendant's prior molestation of his daughter did not violate due process.

We affirm the judgment.

## FACTUAL BACKGROUND

### Child Pornography Evidence

In February 2008, officers conducted a routine parole search of defendant's residence, an apartment he shared with another individual. Defendant led the officers to his bedroom, where they found an external hard drive, one or two Alltel USB wireless cards, and a number of computer software CD's (compact discs). One of the officers asked defendant if he had any pornography on the hard drive. Defendant responded: "Yes, I do." At that point, defendant was arrested for violating the terms and conditions of his parole. The officers did not specifically ask defendant whether there was child pornography on the hard drive.

A forensic analysis of the hard drive revealed the existence of child pornography, a video file saved as "Puebla Mexicana Girl" with a running

---

subd. (f), which provided at the time that "a term of six days will be deemed to have been served for every four days spent in actual custody." (Stats. 1982, ch. 1234, § 7, p. 4554.) Defendant spent 475 days in actual custody and was entitled to 236 days of conduct credit under Penal Code former section 4019 (475 days in actual custody ÷ 4 (and discarding the remainder) = 118; 118 x 2 = 236 days of conduct credit). (See *In re Marquez* (2003) 30 Cal.4th 14, 26 [131 Cal.Rptr.2d 911, 65 P.3d 403].)

time of roughly 25 minutes. The hard drive contained approximately 46,000 other files, including roughly 80 video files containing adult pornography, which were saved in folders entitled "Porn" and "Porn DVD." However, the "Puebla Mexicana Girl" file was saved within the "My Pictures" folder in a subfolder innocuously entitled "Lisa Pics," which contained only 19 files, 18 of which were nonpornographic images of an adult female.

The "Puebla Mexicana Girl" file had a "created date" of May 26, 2003. This date could reflect the date the file was downloaded from the Internet onto the hard drive found in defendant's possession. Defendant was incarcerated in state prison from October 2002 to February 2007, and it is undisputed that defendant could not have downloaded the file. However, if the file was transferred to the hard drive from another hard drive as part of a zip file, the created date could be the date the file was initially saved onto the first hard drive, rather than the date it was transferred to the hard drive found in defendant's possession.

The file also had a "last written date" of July 27, 2007. This date refers to the last time the file was modified in some way. By this date, defendant had been released from state prison. The file's "last access date" was January 4, 2008. This date reflects the last time the file was accessed, but not modified—almost a year after defendant's release from prison.

The prosecution's forensic computer examiner estimated that it would take approximately five minutes to transfer the video file to an external hard drive, assuming a newer computer with a faster processor was used. If a computer with a "real slow, old" processor was used, it could have taken as long as 20 minutes.

### Evidence of Prior Child Molestation

Defendant's 2002 incarceration was the result of his conviction for committing a lewd act on his 15-year-old daughter, K.H.[3] K.H. testified that she was sitting on her father's lap in her grandmother's garage talking about school when he placed his hand under her shirt and touched her breasts. She did not remember whether defendant touched her under or over her bra. The conversation stopped. Scared, she remained in his lap for a short period of time while he touched her. Then she got up, stood there for a second not knowing what to do, and then went into the bathroom and locked the door. Defendant followed, knocked on the bathroom door, apologized for his behavior, and then slid a note under the door containing an apology. While in

---

[3] K.H. thought she was 14, but based on her birth date and the time when the molest occurred, it appears she may have misrecollected her age.

the bathroom, she tried to call her mother on the house cordless phone but realized the phone was not working. After about 10 minutes she left the bathroom and walked into a nearby room. However, when defendant followed, she called out for her grandmother. Her aunt came in, after which defendant left.

Defendant sustained a conviction for a violation of Penal Code section 288, subdivision (c), lewd or lascivious acts with a person 14 or 15 by a person at least 10 years older, for the molest on his daughter. While the specific conviction was apparently not introduced into evidence at trial, K.H. testified on cross-examination that defendant went to prison after the molestation and defense counsel acknowledged in closing argument that defendant went to prison for the molestation. The parties stipulated that defendant was confined in state prison from October 21, 2002, to February 25, 2007.

## DISCUSSION

### I. The Child Pornography

A. *The In Limine Motion*

Prior to trial, defendant moved to prevent the jury from viewing the entire "Puebla Mexicana Girl" video. In his written in limine motion, defendant offered to stipulate "regarding the contents of the video; such as that it contains sexual acts performed by a person that appears to be under 18 years of age." During argument on the motion, counsel for defendant offered to stipulate that "it is, in fact, child pornography." Defendant did not suggest in his written motion or during oral argument that an abridged version of the video be played as an alternative to showing the jury the entire video.

The prosecutor opposed the motion, pointing out that this was a child pornography case and that the video was the "main evidence" in the case. The prosecutor stated that it was her intention to play the entire 25-minute video. Defense counsel then asked the trial court to view the "extremely graphic" video to determine whether its probative value was substantially outweighed by the danger of undue prejudice to defendant. The prosecutor agreed that the video was extremely graphic, and with that concession, suggested it was unnecessary for the court to review the video.

After expressing concern about requiring the jury to view the video and noting that the scope of defendant's proposed stipulation was unclear, the trial court stated that the extent of the stipulation "certainly weighs in my determination as to how to proceed on the jury viewing the videotape." However, the court went on to explain that it could not "hamstring" the

People's ability to prove their case by excluding the video altogether. The court further explained if it "were to disallow the videotape in its entirety, then the jury would be potentially faced with a situation of looking at a case where there's an allegation that the [d]efendant downloaded or possessed, or in some way within the meaning of the statute had a videotape including child pornography . . . . It would be fairly sanitized. It would be like, So what? People download things from their computer all the time, and we don't really care. [¶] So I think that the People are entitled to present a fair depiction of the facts surrounded [*sic*] in the charges to the jury. [¶] The only question I have . . . is whether that can be accomplished through a combination of a stipulation and less than 25 minutes of video." The court suggested that the solution might not necessarily have to be "an all-or-nothing resolution" and that it could restrict the amount of the video it allowed. Without ruling on the motion, the trial court asked counsel to try to reach an agreement as to whether an abridged version of the video could be played. Thus, it was the trial court, not defendant, who suggested the possibility of introducing an edited version of the video.

Later in the day, the prosecutor informed the trial court that there would be no agreement to condense the video. Again acknowledging the extremely graphic nature of the video, the prosecutor explained that she would not play the tape during opening statements or during closing argument, but rather she would only play it once—during the presentation of the evidence. The prosecutor also explained that the case against defendant was based largely on circumstantial evidence, and that both the length and nature of the video would serve to demonstrate that defendant was aware that the video existed on the hard drive and contained child pornography. The prosecutor also contended that playing the video in its entirety would demonstrate that the video was downloaded as a single large file, rather than in smaller "sessions." The prosecutor noted that, given the nature of the video, it would be difficult to select a portion to play to the jury, and further contended that if the video was edited to a shorter segment, the jury would be "left wondering . . . what happened throughout the entire video."

The trial court acknowledged that "the main element" the People would have to prove was whether defendant knew there was child pornography stored on the hard drive. The court went on to state that the prosecution should be permitted to put on enough evidence to avoid jury nullification that might result from the jury not getting the "flavor" of the contents of the video file from a stipulation. The court also acknowledged that the prosecutor could not be forced to enter into a stipulation, but also opined that the prosecution could not stop defendant from admitting that the video contained child pornography, an element of the charged offense. Defense counsel declined to allow defendant to make any admissions, but offered to allow the court to tell

the jury that the defense was not contesting that the video is child pornography. After additional discussion, the court again deferred ruling on the motion.

The next time the parties convened, the trial court ruled that the People would be allowed to play the entire video. However, the court did not review the video file before making its ruling.

The trial court explained that the video's probative value was "extraordinarily high" despite defendant's proposed stipulation that it contained child pornography. This was so because the jury would be required to determine not only whether the video contained child pornography, but also whether defendant knowingly possessed or controlled the video with the knowledge that it depicted a person under 18 years of age personally engaged in or simulating sexual conduct.

The trial court noted that defendant's stipulation did not account for all elements of the offense. Naturally, defendant did not offer to stipulate that he knew he was in possession of the video or that he knew the video contained child pornography. Accordingly, the court noted that defendant's ownership or control and knowledge of the contents were "contested issues for the jury." The court further noted, "[t]his is not a case where . . . defendant's computer contains dozens, hundreds, or thousands of images containing child pornography," but rather there was only one file on the hard drive that did.

Thus, explained the trial court, "[t]he video or at least a sample of it must come into evidence even with the proposed stipulation by . . . defendant." The court went on to explain that requiring the People to "select a segment of eight minutes or ten minutes" would make it "difficult if not impossible" for the jury to assess whether defendant knew the video contained child pornography because "[t]his isolated snippet of the video might not be sufficient to put a viewer on notice that it contained child pornography and therefore the jury might get a distorted impression of the facts in the case."

Expressly applying section 352, the trial court concluded that the probative value of the video was not substantially outweighed by the probability that its admission would require undue consumption of time, confuse the issues, mislead the jury, or create a substantial danger of undue prejudice to defendant. As the trial court explained, playing the 25-minute video would not unduly consume time in a trial estimated to last four days. Nor would the

video be likely to confuse the issues or mislead the jury since the main issue in the case was whether or not defendant knew he possessed child pornography.[4]

The trial court also explained that playing the entire video would not unduly prejudice defendant. Acknowledging that playing the video would be "upsetting to many people," the trial court explained that "[s]o much is unavoidable" in a child pornography case. The trial court continued: "While I'm concerned about presenting 25 minutes of child pornography to a jury, if this was a more typical case with many images of pornography at issue and the prosecutor were to choose only some of those instances[,] specifically, for instance, if [there] were ten videos, each of which [was] 25 minutes in length and the prosecutor chose to show the jury only one of those ten, I don't think anyone would give much thought to this issue. [¶] In this case, there is only one video. It happens to be 25 minutes, and showing one of one is no different in terms of the impact on the jury than showing one of ten or more. So while certain jurors will most likely find it distasteful to view 25 minutes of a tape some of which at least contains child pornography within the meaning of [Penal Code section 311.4, subdivision (d)], I think that is simply a cost of doing business in this case."

After the court announced its ruling, defense counsel suggested, for the first time, that an abridged version could be played to the jury instead of the entire video. Specifically, counsel stated that a "seven[-]minute" excerpt of the video would be "more than adequate to present a taste of that video." However, counsel did not identify a specific excerpt that could be played in lieu of playing the entire video.

Defense counsel acknowledged that the defense intended to contest only the knowledge element, and again, requested that the trial court review the video. Specifically, counsel requested, "if you're going to find that it is not prejudicial, I would ask you to withdraw that finding until you have seen it. And then rule on it." Counsel did not request that the court review the video with an eye toward editing it.

Without reviewing the video, the trial court immediately confirmed its ruling admitting the video in its entirety. In doing so, the court stated that its ruling addressed not just the element of child pornography, to which defendant offered to stipulate, but also the other elements to which defendant did not offer to stipulate. The court noted, "[s]omeone who has a video of 25 minutes, the jury may be persuaded the length is sufficient that it's extremely

---

[4] Defendant does not contest the trial court's determination that playing the entire video would not result in an undue consumption of time, or confuse or mislead the jury. He asserts only the undue prejudice counterweight of section 352.

unlikely that he was unaware of the contents, and to present a seven[-]minute video particularly some of that seven minutes may not fit the definition of [section] 311.1.1 [*sic*], presents the jury with a different view."

Ultimately, the video was played for the jury. The video begins with the girl, who appears close to puberty in development, dancing with her clothes on for a little over a minute. Thereafter, she removes her clothes and dances topless and then completely nude for approximately 10 minutes. Then the video depicts various sexual acts including the girl masturbating an adult male in a shower, the girl engaged in simulated intercourse with an adult male, several acts of digital penetration of the girl by an adult male, an adult male shaving around the girl's vaginal area, and sexual intercourse with an adult male. During approximately the last minute, the girl is videoed while she gets dressed.

After the video was played and while the jury was present, defense counsel renewed the offer to stipulate "that this is child pornography." The trial court called a recess.

During the recess, after admonishing defense counsel for offering to stipulate in front of the jury, the court stated, "Having now seen the video and having looked at least briefly at the definitions in [Penal Code sections 311.11 and 311.4] is [*sic*] now abundantly clear to me that it would have been difficult if not impossible to segregate seven or eight or nine minutes of this film in a way which showed things which were inside the scope of the statute, period; but certainly without seriously distorting the nature of the exhibit. [¶] It appears . . . that perhaps substantial portions of this film do not fall within the scope of the statute, so it would be very, very difficult to . . . cut and paste various parts out of context. [¶] So to the extent . . . I'm adding to my previous [section] 352 ruling on whether to exclude the film in its entirety or to require the People to show parts of it, I now see it[']s even more difficult than I had anticipated at my original ruling to segregate parts of this film out."

Thereafter, for the first time, the defense suggested how the tape might have been edited. Counsel for defendant asserted that a "seven to eight minute[]" segment "would have been appropriate," excluding some of the time where the girl was clothed. She stated that because the video presented a number of opportunities to satisfy the statute, any scene depicting one of the several sexual acts would have satisfied the statute. Counsel suggested, "For example, just the digital penetration would have done it, the shaving of the girl or the shower scene with penis. And any of those clipping [*sic*] even if they were two minutes would have certainly satisfied the statute."

## B. *Analysis—Section 352 Objection*

Defendant now acknowledges that the People were not required to accept his stipulation that the "Puebla Mexicana Girl" video contained child pornography as a sanitized alternative to playing the video for the jury. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1149 [63 Cal.Rptr.3d 297, 163 P.3d 4] (*Zambrano*), disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]; *People v. Pride* (1992) 3 Cal.4th 195, 243 [10 Cal.Rptr.2d 636, 833 P.2d 643].) Nevertheless, he asserts that the trial court abused its discretion under section 352 by allowing the jury to view the entire 25-minute "Puebla Mexicana Girl" video rather than requiring the People to select a shorter excerpt of the video to play for the jury, by failing to review the video before making its ruling and by "denying [defendant] the ability to argue how excerpts from the video could have preserved any legitimate need of the prosecution to show the video."

We begin with the definition of "undue prejudice." This court has noted that " '[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.' The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*." ' (*People v. Karis* (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189]; see *Vorse[v. Sarasy* (1997)] 53 Cal.App.4th [998,] 1009 [62 Cal.Rptr.2d 164].)" (*People v. Escudero* (2010) 183 Cal.App.4th 302, 312 [107 Cal.Rptr.3d 758], italics added (*Escudero*).)

Next, we look to the plain language of section 352 and the sometimes overlooked words, "substantially" and "substantial danger."[5] Evidence is not inadmissible under section 352 unless the probative value is "substantially" outweighed by the probability of a "substantial danger" of undue prejudice or other statutory counterweights. Our high court has emphasized the word "substantial" in section 352. (*People v. Tran* (2011) 51 Cal.4th 1040, 1047 [126 Cal.Rptr.3d 65, 253 P.3d 239] ["But Evidence Code section 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect."]; cf. *People v. Geier* (2007) 41 Cal.4th 555, 585 [61 Cal.Rptr.3d 580, 161 P.3d 104].)

Trial courts enjoy " 'broad discretion' " in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value.

[5] See footnote 1, *ante.*

(*People v. Michaels* (2002) 28 Cal.4th 486, 532 [122 Cal.Rptr.2d 285, 49 P.3d 1032] (*Michaels*); *People v. Perry* (2006) 38 Cal.4th 302, 318 [42 Cal.Rptr.3d 30, 132 P.3d 235]; see *People v. Memro* (1995) 11 Cal.4th 786, 866 [47 Cal.Rptr.2d 219, 905 P.2d 1305] (*Memro*).) A trial court's exercise of discretion "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

1. *Forfeiture*

Contrary to defendant's assertion that he was denied the ability to argue excerpts should have been admitted instead of the entire video, we conclude that defendant could have identified specific excerpts or other specific alternatives and since he did not, he has forfeited any such arguments.

As we have noted, defendant originally sought to exclude the entire video file and substitute it with a stipulation that the video "is, in fact, child pornography." After the trial court made its ruling, defendant for the first time suggested that a seven-minute excerpt would be "more than adequate to present a taste" of the video to the jury. However, defendant did not suggest a specific excerpt. Then, after the video was played to the jury, defense counsel, for the first time, suggested that an abridged version "would have been appropriate," excluding some of the time when the girl was clothed and depicting one of the sex acts.

Defendant now asserts in his appellate briefing other alternatives. In his opening brief, he suggests that one or more images of the girl "in a state of undress" could have been included to establish the girl's age and a "timeline indicating the number of sexual acts committed" could have been provided to the jury. Later he suggests the timeline could have been provided "with images," but does not specify which images. Later, he argues "the evidence could be fully satisfied by a timeline, or at worst, by showing the events leading up to the first sex act." In his reply brief, defendant states that he would have "easily" found images from the video "more palatable" as alternative evidence, but he does not indicate what specific images would have had equal probative value to playing the entire video.

■ Section 353 provides in pertinent part, "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and *so stated as to make clear the specific ground of the objection or motion . . . .*" (Italics added.) In accord with this statute, our high

court has consistently held that a " ' "defendant's failure to make a timely and *specific* objection" on the ground asserted on appeal makes that ground not cognizable. [Citation.]' " (*People v. Partida* (2005) 37 Cal.4th 428, 434 [35 Cal.Rptr.3d 644, 122 P.3d 765], italics added (*Partida*).) " 'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' " (*Partida, supra*, 37 Cal.4th at p. 434.) " '[T]he objection must be made in such a way as to alert the trial court to the . . . basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility.' [Citation.] What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of *the specific reason or reasons* the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling. If the court overrules the objection, the objecting party may argue on appeal that the evidence should have been excluded for the reason asserted at trial, but it may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial. *A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct.*" (*Id.* at p. 435, italics added.)

The requirement of a specific objection under section 353 applies to claims seeking exclusion under section 352. (*People v. Harrison* (2005) 35 Cal.4th 208, 230–231 [25 Cal.Rptr.3d 224, 106 P.3d 895].) In *People v. Cowan* (2010) 50 Cal.4th 401 [113 Cal.Rptr.3d 850, 236 P.3d 1074] (*Cowan*), the defendant objected in limine to the admission of " 'any and all' postmortem photographs of the victims." (*Cowan, supra*, 50 Cal.4th at p. 476.) He argued on appeal that the trial court abused its discretion under section 352 by considering " 'en masse' " the admissibility of graphic photographs depicting the scene and the victims' bodies rather than "weigh[ing] the probative value of each photograph against its individual prejudicial effect." (*Cowan, supra*, at p. 476; see *id.* at pp. 475–477.) The Supreme Court held the defendant had forfeited this contention because he made a blanket motion in limine to exclude all photographs in the trial court and did not object to individual photographs when they were introduced. (*Id.* at pp. 476–477; see also *People v. Booker* (2011) 51 Cal.4th 141, 170–171 [119 Cal.Rptr.3d 722, 245 P.3d 366] [to the extent the defendant had not forfeited the contention that some photographs were cumulative, he did not specify on appeal which photographs were cumulative, and the court "decline[d] to hazard a guess on his behalf"]; *People v. Solomon* (2010) 49 Cal.4th 792, 821 [112 Cal.Rptr.3d 244, 234 P.3d 501] [defendant moved to exclude tape-recorded postarrest

statements under § 352 but failed to identify to the trial court the particular passage challenged on appeal or argue its purported prejudicial effects].)

We are aware that trial courts should consider the "availability of less prejudicial alternatives" before admitting uncharged conduct evidence in the context of other crimes evidence. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*).) Such alternatives might include admitting some but not all of the defendant's other sex offenses, or excluding irrelevant and inflammatory details surrounding the offense. (*Ibid.*) However, that rule is driven by the policy disfavoring propensity evidence. (*Id.* at pp. 915–916.) Defendant cites no authority requiring the trial court to come up with evidentiary alternatives on its own in the context presented here and we decline to read such a requirement into section 352.

■ We hold that when making a section 352 objection grounded upon the existence of an evidentiary alternative, the requirement in section 353, subdivision (a), to state specific reasons for an objection necessarily requires the objecting party to identify the evidentiary alternative with specificity. Otherwise, the trial court will not be fully apprised of the basis on which exclusion is sought; nor can the trial court conduct a balancing analysis which involves weighing the probative value of the alternative.

Here, the assertion that a seven-minute excerpt would have been "more than adequate to present a taste of th[e] video," made only after the trial court announced its in limine ruling, was nonspecific and thus insufficient to weigh against the probative value of the entire video. The proffer made after the video was shown to the jury that an abbreviated version excluding some of the time when the girl was clothed and including one sex act obviously came too late for the court to consider. Defendant's slightly more specific, but untimely suggestion now made on appeal of a timeline and nonspecified selected images comes far too late in the game. The trial court was not asked to consider this specific evidentiary alternative, and thus the court had no opportunity to evaluate it. As *Partida* noted, "[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*Partida, supra*, 37 Cal.4th at p. 435.) We hold that defendant's arguments grounded on his belatedly suggested evidentiary alternatives are forfeited.

### 2. *Section 352 Balancing*

Assuming arguendo that defendant's section 352 arguments are properly preserved for appeal, we do not find that the trial court abused its discretion by admitting the entire video.

In addressing the admissibility of photographs over a section 352 objection in murder cases, our high court has repeatedly noted that " ' " '[m]urder is

seldom pretty, and pictures . . . in such a case are always unpleasant' " . . . .' " (*Cowan, supra,* 50 Cal.4th at p. 475; accord, *People v. Gurule* (2002) 28 Cal.4th 557, 624 [123 Cal.Rptr.2d 345, 51 P.3d 224]; *People v. Pierce* (1979) 24 Cal.3d 199, 211 [155 Cal.Rptr. 657, 595 P.2d 91].)

In *People v. Navarette* (2003) 30 Cal.4th 458 [133 Cal.Rptr.2d 89, 66 P.3d 1182], the court rejected the claim that the " 'sexually suggestive nature' " of photographs of a murder victim created undue prejudice, noting that "it was the nature of the crime . . . that made it necessary for the jury to see her without clothes." (*Id.* at p. 496.)

*Memro* discussed the admissibility of postmortem photographs of children who were murdered in a "ghastly manner." (*Memro, supra,* 11 Cal.4th at p. 866.) Some of the photos were taken at the murder scenes and some were taken at the morgue. (*Id.* at p. 865.) Our high court noted, "It would surprise us if the jurors were able to view them without being sickened, disgusted, or shocked," but then went on to observe, "[b]ut the question before us is whether the court's ruling that the photographs could be admitted was within reason. It was." (*Memro, supra,* 11 Cal.4th at p. 866.)

██ Unlike the circumstances in the murder cases, the video evidence here did not illustrate the aftermath of a crime; *it was the crime.* Consequently, the probative value of the single video here was high. Like the photographic and video evidence in murder cases, child pornography is not pretty and will always be unpleasant. Trial courts must be afforded equally broad discretion in ruling on section 352 objections in this context.

As the court observed in *Memro,* it would surprise us if the jurors here were not "sickened, disgusted, or shocked" by much of what was depicted during the video on the hard drive found in defendant's possession.[6] And, as in *Memro,* the question we answer here is whether the trial court's ruling was within reason. We conclude it was. The trial court correctly observed that the single video's probative value was extremely high.[7] The video was relevant

---

[6] Defendant argues that we should consider the voir dire responses of excused jurors concerning the prospect of viewing the video in determining undue prejudice, but cites no authority for this proposition. We decline to do so. We agree that child pornography can evoke a strong emotional bias in some people. That bias was reflected by several prospective jurors who were excused. The same can be said for murder, sexual assault and child molestation. The concerns and beliefs of prospective jurors who are excused for cause in such a case cannot be the barometer for whether evidence is unduly prejudicial for section 352 purposes. Moreover, none of the seated jurors indicated that they would be predisposed to find defendant guilty merely because they were shown a 25-minute video depicting an underage girl involved in sexual acts with an adult male.

[7] As the trial court implied, this case would present a different balancing analysis had defendant been found in possession of multiple pieces of child pornography. A defendant's

to prove not only that it contained child pornography, but also that defendant knowingly possessed a video containing child pornography on the hard drive.[8]

While a seven-minute excerpt might have been sufficient to demonstrate that the video contained child pornography, such an excerpt might not have demonstrated that defendant was aware that the video file contained child pornography, or even that the file existed on his hard drive among thousands of other files. The length of the video itself tends to prove that it was not transferred to defendant's hard drive by accident. The People's forensic analyst testified that the file would have taken approximately five minutes to transfer, assuming that a newer computer with a faster processor was used.

More importantly, had the jury been shown only a seven-minute excerpt, it could have been given a dramatically different idea of the contents of the video, depending on what part of the video was excerpted.

For instance, if only the last seven to eight minutes of the video were shown—a portion of the video depicting multiple sex acts performed by an adult man on a prepubescent girl—the jury would have been left with no doubt that the video contained child pornography, but might have wondered whether the first 18 minutes of the video would have placed defendant on notice of the coming sexual exploitation of the minor. On the other hand, if only the first seven to eight minutes were shown—a portion of the video in which the girl simply dances and removes her clothing—jurors might have wondered whether this conduct was sufficient to qualify as "sexual conduct" within the meaning of Penal Code section 311.4, subdivision (d),[9] when the later portion of the video would have left the jurors with no doubt in that regard.

---

simultaneous possession of multiple pieces of child pornography is chargeable as only one criminal offense. (*People v. Manfredi* (2008) 169 Cal.App.4th 622, 624 [86 Cal.Rptr.3d 810]; *People v. Hertzig* (2007) 156 Cal.App.4th 398, 399, 403 [67 Cal.Rptr.3d 312] [possession of a computer with 30 videos involving child pornography constituted a single count of possession of child pornography].) Consequentially, in a case involving multiple pieces of child pornography, the probative value of admitting the entirety of a defendant's collection may not be any higher than admitting only a few pieces unless there are other circumstances. Moreover, depending on the depictions in the collection and other circumstances in the case, the danger of prejudice resulting from the admission of an entire collection could substantially outweigh the probative value, particularly since admitting the extra pieces could have very little effect on the issues given the charging rules for possession of child pornography in California.

[8] Although the age of the girl in the video was not in active dispute, the video was also relevant to show that this was not a situation in which defendant could have mistakenly believed a 16- or 17-year-old child actor was older than 18 years of age. Here, the video clearly depicts a girl who was younger than 18.

[9] Penal Code section 311.4, subdivision (d) contains the definition of sexual conduct. It reads in pertinent part: " '[S]exual conduct' means any of the following, whether actual or

If edited snippets of the video were pieced together, the jury might have wondered what took place in between the snippets and what impact the depictions in the omitted portions might have had on defendant's knowledge of what the entire video contained. Showing only one sex act, as the defense belatedly suggested after the video had been played for the jury, would not have been nearly as probative as the entire video because the single act would necessarily be out of the context of the rest of the video. In fact, as the trial court noted, such editing would have distorted the context. Unanswered questions could have resulted, such as what came before and after the sex act, and whether a person who viewed only portions of the video could simply have missed the one illegal depiction. The same can be said of the unspecified individual images defendant belatedly suggests on appeal. Those too would have been out of context, and even with a timeline, questions might remain about what occurred between the selected images. On the other hand, the presence of multiple illegal video depictions running together in the original video and lasting for various periods of time during the last 14 minutes of the video make it less likely that a person who viewed portions of the video would not know it contained child pornography. The court noted as much when it reasoned, "[s]omeone who has a video of 25 minutes, the jury may be persuaded the length is sufficient that it is extremely unlikely that he was unaware of the contents." Certainly, allowing the jury to view the entire video decreased any concern that defendant may have fast-forwarded through the video and missed the illegal depictions. We cannot find that the trial court abused its discretion when it determined that the entire video was highly probative of defendant's knowledge.

Nor can we find that the trial court abused its discretion in concluding that the probative value of the entire video was not "substantially outweighed" by a "substantial danger" of undue prejudice. In addition to the photographs of the murdered children admitted in *Memro*, the trial court in that case admitted magazines containing sexually suggestive stories and photographs depicting clothed and unclothed children as evidence of defendant's motive and intent to perform lewd or lascivious acts on one of the victims. (*Memro, supra*, 11 Cal.4th at p. 864.) Rejecting defendant's claim that the admission of this evidence violated section 352, the California Supreme Court explained: "We find no abuse of discretion in admitting the magazines or the photographs. To

---

simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. An act is simulated when it gives the appearance of being sexual conduct."

be sure, some of this material showed young boys in sexually graphic poses. It would undoubtedly be disturbing to most people. But we cannot say that it was substantially more prejudicial than probative, for its value in establishing defendant's intent to violate [Penal Code] section 288 was substantial. The court balanced the items' evidentiary worth against their potential to cause prejudice and determined that the former substantially outweighed the latter. Its decision was reasonable." (*Memro, supra*, at p. 865.)

Similarly, here, the trial court balanced the probative value of the video as a whole against the potential to cause undue prejudice to defendant. While the content of the video is disturbing, the trial court's determination that the probative value of establishing defendant's knowledge was not "substantially" outweighed by a "substantial danger" of prejudice was not arbitrary, capricious nor patently absurd.

■ Defendant criticizes the trial court for not reviewing the video before making its section 352 ruling. We do not condone this practice. The trial court should have reviewed the video before ruling on its admissibility. Admitting evidence over a section 352 objection without reviewing that evidence could be viewed as arbitrary, and it would have been an abuse of discretion had the court admitted the evidence based on an erroneous and uninformed assessment of the evidence. The nature of discretion requires that the court's decision be an informed one and not " 'a shot in the dark.' " (*People v. Filson* (1994) 22 Cal.App.4th 1841, 1849 [28 Cal.Rptr.2d 335] (*Filson*), disapproved on another ground in *People v. Martinez* (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037]; see *Filson, supra*, at pp. 1847–1848 [by sustaining prosecution objection to tape recording of defendant's statement to police without listening to the tape to determine whether demeanor exhibited during statement might show defendant was intoxicated, trial court could not make intelligent evaluation of probative value or assess prejudice].)

On the other hand, the trial court may rely on an offer of proof. In *People v. Pedroza* (2007) 147 Cal.App.4th 784 [54 Cal.Rptr.3d 636], a murder-arson case, the defendant argued the trial court failed to exercise its discretion because it did not actually view a videotaped demonstration of a paper towel being burned before exercising its discretion to admit the videotape into evidence. (*Id.* at pp. 795–796.) The appellate court stated that, even if the trial court did not personally watch the recording, "defendant provides no authority for the proposition that a trial court may not rely on counsel's description of proffered evidence. Although it may have been more prudent for the trial court to have looked at the videotape, there is no reason to presume it did not

appropriately understand the nature of the evidence in question. This is especially so given the simple nature of the demonstration and the lack of any claim that the prosecutor inaccurately described the contents of the video-tape." (*Id.* at p. 795.) Here, in ruling on the motion, the trial court apparently accepted the parties' agreement that the video contained extremely graphic child pornography.

In any event, defendant has not shown how the trial court's decision would have been different had it reviewed the video prior to making its ruling. To the contrary, after the video was played for the jury, the trial court stated outside its presence that it was "abundantly clear" that the video could not be edited without "seriously distorting the nature of the exhibit." The court noted that much of the video contained depictions that did not meet the definition of child pornography and that it would have been difficult "to cut and paste various parts out of context." Thus, watching the video confirmed the trial court's decision to admit the video in its entirety, rather than to attempt to edit the video into a shorter excerpt. After reviewing the video, we do not disagree with the trial court's assessment. "[W]hether or not such editing would have been desirable," we cannot find an abuse of discretion in the trial court's conclusion that the video "as a whole" was not unduly prejudicial. (*Michaels, supra,* 28 Cal.4th at p. 532; see *id.* at pp. 531–532 [court held that "most of" a crime scene video depicting murdered female victim's nude body was probative even though defendant was not charged with sexual assault allegations, and the trial court did not abuse its discretion in allowing the entire video without editing to eliminate sexual suggestiveness, including closeup shots of victim's pubic area].)

Defendant relies on *U.S. v. Merino-Balderrama* (9th Cir. 1998) 146 F.3d 758 (*Merino-Balderrama*). The contrast between that case and defendant's case makes our point. In *Merino-Balderrama,* the defendant was arrested for driving without a license. The police discovered pornographic materials in the trunk of the car. While most of the materials involved adults only, one magazine and seven films contained child pornography. The films were boxed separately, and each box cover bore photographs of children engaged in sexual conduct; the cover photographs were still shots taken from the film the box contained. (*Id.* at p. 760.) At the defendant's federal trial for possession of child pornography, the prosecution was allowed to show the jury several minutes from each of six of the seven films. (*Id.* at pp. 760–761.)

The United States Court of Appeals for the Ninth Circuit held that the district court abused its discretion under rule 403 of the Federal Rules of

Evidence (28 U.S.C.)[10] by allowing the jury to view the videos. (*Merino-Balderrama, supra*, 146 F.3d at pp. 762–763.) The court based its holding on the analysis in *Old Chief v. United States* (1997) 519 U.S. 172 [136 L.Ed.2d 574, 117 S.Ct. 644] (*Old Chief*). In *Old Chief*, the United States Supreme Court held that a criminal defendant could stipulate to the existence of a felony conviction when charged with the federal equivalent of felon in possession of a firearm,[11] similar to our high court's holding in *People v. Valentine* (1986) 42 Cal.3d 170 [228 Cal.Rptr. 25, 720 P.2d 913].[12]

The circuit court in *Merino-Balderrama* focused on the stipulation in *Old Chief*, noting that the Supreme Court had stated, "a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under Rule 403." (*Merino-Balderrama, supra*, 146 F.3d at p. 762.) The court then noted that the defendant was willing to stipulate that he travelled in interstate commerce with materials that contained child pornography. Again citing *Old Chief*, the court explained that this stipulation "would have been *conclusive* on those two elements and therefore could have required the district court to exclude further evidence probative of those elements." (*Ibid.*) Because the only remaining element was the defendant's knowledge, the district court's decision under rule 403 of the Federal Rules of Evidence (28 U.S.C.) turned on whether the films were more probative of the defendant's knowledge than the less prejudicial box covers that were also in evidence. (146 F.3d at p. 762.)

The Ninth Circuit then explained that the prosecution "offered no direct or circumstantial evidence that [the defendant] had knowledge of the films' contents," and concluded that without such evidence the films were less probative of the defendant's knowledge than their box covers, "which [the defendant] undisputedly *did* see." (*Merino-Balderrama, supra*, 146 F.3d at pp. 762–763.) In reaching this conclusion, the court emphasized that there was undisputed evidence the defendant did not order the films, but rather

[10] Rule 403 of the Federal Rules of Evidence (28 U.S.C.) is the federal counterpart to section 352. Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[11] The defendant in *Old Chief* was charged with a violation of section 922(g)(1), of title 18 of the United States Code, which made it unlawful for anyone " 'who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year' " to " 'possess in or affecting commerce, any firearm . . . .' " (*Old Chief, supra*, 519 U.S. at p. 174.) For ease of reference, we will refer to this offense by one of the labels commonly used to describe the California equivalent, "felon in possession of a firearm."

[12] But see *People v. Cajina* (2005) 127 Cal.App.4th 929, 932, 933 [26 Cal.Rptr.3d 171] (in a prosecution for a violation of Pen. Code, § 290 [failure to register as a sex offender], the prosecution was not required to sanitize the sexual nature of the prior felony conviction by stipulating that defendant "had a statutory duty to register because of 'a felony conviction' ").

stumbled upon them when he found an abandoned briefcase bearing someone else's name, and that he was unable to discern the images by holding the film stock up to the light. (*Id.* at pp. 760, 763.) The prosecution also conceded that the defendant did not appear in any of the films and was not involved in their production. (*Id.* at p. 763.) Thus, because the packaging was more probative of the defendant's knowledge than the films themselves, and because "the films possessed a greater potential for unfair prejudice than did their packaging," the district court erred in allowing the films to be played for the jury. (*Ibid.*)

There are at least two problems with defendant's reliance on *Merino-Balderrama*. First, California courts do not discount probative value because of a defendant's willingness to stipulate. Second, unlike *Merino-Balderrama*, the trial court here was not presented with a specific evidentiary alternative.

█ As defendant has conceded, under California law, the prosecution "cannot be compelled to accept a stipulation if the effect would be to deprive the state's case of its persuasiveness and forcefulness." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1007 [254 Cal.Rptr. 586, 766 P.2d 1].) *People v. Salcido* (2008) 44 Cal.4th 93 [79 Cal.Rptr.3d 54, 186 P.3d 437] (*Salcido*) is illustrative. There, the defendant was charged with seven murders and a multiple-murder special-circumstance allegation. Two of his victims were young girls, ages eight and 12. The nightgown of one of the girls was pulled above her waist, her underpants were wrapped around one ankle, and her legs were spread apart. The second girl was found lying facedown. The nightgown of the second girl was pulled above her waist. Her panties, which had blood on them, were wrapped around one foot, and her legs were apart. A bloody handprint was found on her buttock, and additional handprints were on her thighs. (*Id.* at p. 107.) Over the defendant's objection, the trial court admitted in the guilt phase a photograph depicting the second young girl in this position. (*Id.* at p. 146.) Our high court rejected the defendant's argument that his offer to stipulate to the position of the bodies made the evidence irrelevant.[13] The court further observed that the prosecution is not required to accept a stipulation " ' "if the effect would be to deprive the state's case of its persuasiveness and forcefulness," ' " nor is it " 'obligated to present its case in the sanitized fashion suggested by the defense.' [Citations.] The prosecutor need not stipulate to proof in place of photographic evidence. [Citation.]" (*Salcido, supra*, 44 Cal.4th at p. 147.)

---

[13] Defendant was not charged with the commission of sex-related offenses on the two girls. The Supreme Court held that the photograph and related testimony was relevant "to establish . . . that [the defendant] acted methodically and deliberately rather than as the result of uncontrollable impulses arising from his ingestion of drugs and alcohol." (*Salcido, supra*, 44 Cal.4th at p. 147.)

Defendant has not cited any California authority for the proposition that a proposed stipulation weighs into the determination of probative value and can actually decrease probative value in a section 352 analysis.[14] Indeed, our high court has suggested the contrary. "The circumstance that the defense might have preferred that the prosecution establish a particular fact by stipulation, rather than by live testimony, *does not alter the probative value* of such testimony or render it unduly prejudicial. The prosecution [is] not required to accept such a stipulation or other 'sanitized' method of presenting its case." (*People v. Carter* (2005) 36 Cal.4th 1114, 1169–1170 [32 Cal.Rptr.3d 759, 117 P.3d 476], italics added.)

We note that *Old Chief* discussed the general federal rule regarding stipulations and the policy underlying that rule—a rule that is consistent with California law. As a general matter, "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." (*Old Chief, supra,* 519 U.S. at pp. 186–187.) The court reasoned that "a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once . . . . Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them. . . . [T]he evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much *to tell a story of guiltiness* as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." (*Id.* at pp. 187–188, italics added.)

---

[14] We do not disagree with the basic proposition that *evidence may* have a lower probative value if it is merely cumulative of other evidence (*Burke v. Almaden Vineyards, Inc.* (1978) 86 Cal.App.3d 768, 774 [150 Cal.Rptr. 419], citing Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1972) § 22.1, pp. 288, 289; see 1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2011) § 22.6, p. 405) and there is a substantial danger of confusing or misleading the jury or a substantial danger of necessitating an undue consumption of time. (*Filson, supra,* 22 Cal.App.4th at p. 1850.) To be cumulative imports that something of like effect is shown. (*Id.* at p. 1851.) However, " '[e]vidence that is identical in subject matter to other evidence should not be excluded as "cumulative" when it has greater evidentiary weight or probative value.' [Citation.]" (*Ibid.*)

The high court went on to note the "accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. *People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters*, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best." (*Old Chief, supra*, 519 U.S. at p. 189, italics added.) Concerning the record of conviction, the court observed that the "recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has, however, virtually no application" when the issue is whether the jury should be informed about the nature of a specific predicate felony conviction in a felon in possession of a firearm prosecution. (*Id.* at p. 190.) In such a case, "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." (*Id.* at p. 191.)

Unlike the prior conviction in *Old Chief*, which was relevant on only one element, the evidence here was relevant and probative on two elements—the nature of the video as child pornography and defendant's knowledge of the contents of the video. Playing the entire single video helped tell the story relative to defendant's knowledge—a story uninterrupted by "gaps of abstraction" and "missing chapters" in the video which could have weakened the inferences to be drawn as to defendant's knowledge.

As we have noted, the contrast between *Merino-Balderrama* and this case makes our point. In *Merino-Balderrama*, there was less prejudicial evidence that was actually more probative of the defendant's knowledge than the videos—the box covers. This was so because there was undisputed evidence that the defendant had not seen the films, but had seen the box covers, and the box covers bore still photographs from the films depicting children engaged in sexual conduct. Here, there is no box cover.[15]

---

[15] Although not key to our decision concerning the trial court's exercise of discretion here, there is circumstantial evidence that defendant was aware of the contents of the video. If the file had been "stumbled upon," like the porn collection in *Merino-Balderrama*, for instance, while transferring a zip file containing adult pornography, then it likely would have ended up in one of defendant's subfolders specially designated to house pornography. Instead, the file was saved in a user-created subfolder innocuously entitled "Lisa Pics," which contained only 19 files, 18 of which were nonpornographic images of an adult female. The fact that the file was segregated from the adult pornography provides a reasonable inference that defendant was aware of its prohibited content. The file was also accessed and modified after defendant's

Defendant implies that an edited version of the video here equates to the box covers in *Merino-Balderrama*. Here, his failure to suggest specific alternatives presents another hurdle to his challenge of the trial court's ruling. We are not in a position to compare probative value because defendant never proposed to the trial court a specific excerpt or an edited version against which we could compare the whole video. Had defendant proposed a specific portion of the video, we could compare the probative value of that excerpt against the probative value of the entire video and compare both against the potential danger of prejudice and then evaluate the trial court's ruling. Instead, without a specific evidentiary alternative to compare, we are asked, in the abstract, to find the trial court abused its discretion. This, we decline to do.

Even defendant's newly offered suggestion to substitute the video with a timeline and images is unavailing because defendant does not specify which images would have been "palatable" or how the timeline would read. Thus, we cannot compare that alternative to the entire video for purposes of determining whether the trial court abused its discretion. More importantly, since these alternatives were not presented to the trial court, we decline to engage in Monday morning quarterbacking by holding that defendant's recently developed play would have been equally probative and less prejudicial than the play called by the trial court. Instead, we limit our review of the trial court's exercise of discretion to the arguments advanced in the trial court and conclude that the trial court did not abuse its discretion.

## C. *Due Process Objection*

■ Having concluded that the trial court did not abuse its discretion under section 352, we must also reject defendant's argument that he was deprived of his constitutional right to a fair trial. " 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' " (*Partida, supra*, 37 Cal.4th at p. 439, quoting *Falsetta, supra*, 21 Cal.4th at p. 913.)

As our Supreme Court has explained in the context of gruesome crime scene photographs: " 'The photographs at issue here are gruesome because the charged offenses were gruesome, but they did no more than accurately portray the shocking nature of the crimes.' [Citation.] The jury must be

release from prison, providing further circumstantial evidence that defendant had seen the video. Although defendant did not admit there was child pornography on the hard drive, his statement to the officers who conducted the parole search that the hard drive contained "pornography" is further evidence tending to show that he knew what was on the hard drive.

protected from sensationalized illustrations of a crime, 'but the jury cannot be shielded from an accurate depiction of the charged crimes that does not unnecessarily play upon the emotions of the jurors.' [Citation.]" (*Zambrano, supra*, 41 Cal.4th at p. 1150.) Here, the "Puebla Mexicana Girl" video was abhorrent because it contained child pornography, but it did no more than accurately portray the child pornography found on defendant's hard drive. We cannot conclude that presentation of the entire video rendered defendant's trial fundamentally unfair.

## II. Evidence of Prior Child Molestation

### A. *The In Limine Motion*

In limine, the prosecution sought to introduce evidence that defendant previously had molested his daughter, K.H., during a single event, as well as evidence that he had molested another daughter on multiple occasions. Defendant had been convicted of the molest incident involving K.H. but acquitted by the jury of molesting the other daughter. K.H. was 15 years old at the time of the molest, and 23 at the time of trial. The other daughter was less than eight years old at the time she was allegedly molested by defendant. At the time of the trial in this case, she was only approximately 14 or 15.

During the numerous incidents involving the other daughter, defendant, on one occasion, allegedly watched a pornographic movie with her while he was nude and attempted vaginal and anal penetration with an object. On another occasion, the daughter stated defendant ejaculated in her presence while he was at a computer, ejaculated on her, and touched her vaginal area with his penis. She also stated that more than once, defendant orally copulated her, attempted to have her orally copulate him and made her masturbate him.

The trial court allowed testimony concerning the K.H. incident, reasoning that the evidence was relevant to show defendant had a sexual interest in young girls and thus a motive for having the child pornography. The court further reasoned that the evidence also tended to show that defendant was the person who acquired and possessed the video and that defendant's possession was not the result of mistake. The court concluded that the evidence was admissible under both section 1101, subdivision (b)[16] and

[16] Section 1101 provides in pertinent part:

"(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity,

section 1108.[17] Expressly weighing the probative value against the danger of prejudice, the court determined that section 352 did not preclude admission of the molest of K.H.

However, based on its section 352 analysis, the trial court excluded the molest incidents involving the other daughter. The court noted that she had made inconsistent statements, there had been an acquittal when the allegations were tried, and there was a substantial danger of consuming an undue amount of time and confusing or misleading the jury.

### B. Analysis—Section 1108

Defendant contends that the trial court violated his constitutional rights by allowing K.H. to testify about the prior molestation. Specifically, defendant asserts that admission of this evidence under section 1108 violated his constitutional rights to due process and equal protection of the laws.[18]

■ Section 1108 permits " ' "consideration of . . . other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' " (*People v. Soto* (1998) 64 Cal.App.4th 966, 984 [75 Cal.Rptr.2d 605].) As this court has previously observed, " '[i]n enacting . . . section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible *without regard to the limitations of Evidence Code section 1101.*' [Citation.]" (*People v. Britt* (2002) 104 Cal.App.4th 500, 505–506 [128 Cal.Rptr.2d 290]; see *id.* at pp. 502, 503–504 [evidence of prior indecent exposure convictions was admissible to prove defendant's propensity and intent to commit the same kinds of offenses, even though that testimony also established his identity as the perpetrator].) Here, evidence

intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

[17] Section 1108 provides in pertinent part:

"(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352. [¶] . . . [¶]

"(d) As used in this section, the following definitions shall apply: [¶] (1) 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following: [¶] (A) Any conduct proscribed by Section . . . 288, . . . or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11 . . . of the Penal Code."

[18] Defendant also asserts that this evidence was not admissible under section 1101, subdivision (b). In light of our holding concerning section 1108, we need not address the trial court's determination that the evidence was also admissible under section 1101, subdivision (b).

showing defendant had a sexual interest in underage girls was relevant to the issue of whether he knowingly possessed the child pornography hidden in the "Lisa Pics" file.

 The California Supreme Court rejected a due process challenge to section 1108 in *Falsetta*. There, the court noted, "[t]o prevail on such a constitutional claim, defendant must carry a heavy burden. The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity. [Citations.] In the due process context, defendant must show that section 1108 offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. [Citations.] The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*Falsetta, supra*, 21 Cal.4th at pp. 912–913.) Our high court held that section 1108 does not offend fundamental due process principles. (*Falsetta, supra*, 21 Cal.4th at pp. 916–922.) Recently, in *People v. Loy* (2011) 52 Cal.4th 46 [127 Cal.Rptr.3d 679, 254 P.3d 980] (*Loy*), our high court was asked to reconsider its holding in *Falsetta*. Finding no good reason to do so, the court declined. (*Loy, supra*, 52 Cal.4th at p. 60.) We are bound by our high court's decisions in *Falsetta* and *Loy*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Defendant contends that *Falsetta*'s rationale does not apply in child pornography possession cases. *Falsetta* recognized that the principal justification for section 1108 was the Legislature's practical realization that sex crimes, by their very nature, are usually committed in seclusion without third party witnesses or substantial corroborating evidence. Trials in such cases often present conflicting versions of the event and require the trier of fact to make difficult credibility determinations. Thus, the policy considerations generally favoring the exclusion of evidence of uncharged sexual offenses are outweighed in sexual offense cases by the policy considerations favoring the admission of such evidence. (*Falsetta, supra*, 21 Cal.4th at p. 915.) Defendant argues that because child pornography possession cases do not involve credibility contests, *Falsetta*'s due process analysis does not apply.[19] We disagree.

---

[19] Defendant also relies on *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378 in contending that admission of the K.H. molestation evidence violated his due process rights. Defendant's reliance on *McKinney*—a case decided before enactment of the federal rules allowing evidence of uncharged sexual assaults and child molestation and the enactment of section 1108—is misplaced. (See *Falsetta, supra*, 21 Cal.4th at p. 921.) The application of *McKinney*'s holding in the context of section 1108 evidence has been repeatedly rejected. (*Falsetta, supra*, 21 Cal.4th at pp. 921–922; *People v. Callahan* (1999) 74 Cal.App.4th 356, 365 [87 Cal.Rptr.2d 838]; *People v. Fitch* (1997) 55 Cal.App.4th 172, 181–183 [63 Cal.Rptr.2d 753] (*Fitch*).) The Ninth Circuit and other federal courts have long since upheld the constitutionality of the

We first note other legislative history related to the probative value of uncharged sexual misconduct evidence. " ' "In child molestation actions a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people." ' (Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 882 (1995–1996 Reg. Sess.) as amended May 15, 1995, p. 6.)" (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532, fn. 9 [110 Cal.Rptr.3d 515].)

We also observe that if potential credibility contests were required to overcome a due process objection, uncharged acts of sexual misconduct would never be admissible under section 1108 in felony-murder cases. Our high court addressed this very situation in *People v. Story* (2009) 45 Cal.4th 1282 [91 Cal.Rptr.3d 709, 204 P.3d 306], a rape-burglary-felony-murder case. "The necessity for admitting this particularly probative evidence that exists when the alleged victim's credibility might be questioned can be no greater than the necessity that exists when the victim was *killed* and thus cannot even tell her story. *To help determine what happened* in [the victim's] home the night defendant strangled her, it was particularly probative for the jury to learn of defendant's history of sexual assaults. *Neither section 1108's language nor its purpose supports the conclusion the Legislature wanted to permit this evidence when the alleged sexual assault victim survives and can testify but not when the victim dies and cannot speak.*" (*Story, supra,* at p. 1293, second & third italics added; see *Loy, supra,* 52 Cal.4th at p. 62.)

Likewise, the Legislature obviously did not intend the existence of a credibility contest to be a predicate for admitting prior sexual misconduct in child pornography cases. The prior molestation incident here was relevant and probative to establish defendant's sexual interest in children. Instead of helping the jury determine what happened, as in the felony-murder cases, the prior molestation incident here helped the jury determine a secret operation of defendant's mind—his *knowledge* of the presence of the child pornography on the hard drive.

■ Next, we note that *Falsetta's* holding is not grounded on the existence of a credibility contest. Rather, the due process challenge was rejected because of the availability of section 352 as a safeguard against unduly prejudicial evidence. (*Falsetta, supra,* 21 Cal.4th at pp. 916–921.) Quoting this court's earlier opinion in *Fitch, supra,* 55 Cal.App.4th at page 183, *Falsetta* noted, " '[s]ection 1108 has a safeguard against the use of

federal rules allowing sexual misconduct evidence to establish propensity to commit such crimes. (*U.S. v. LeMay* (9th Cir. 2001) 260 F.3d 1018, 1026 (*LeMay*); see also *U.S. v. Mound* (8th Cir. 1998) 149 F.3d 799, 800–801; *U.S. v. Castillo* (10th Cir. 1998) 140 F.3d 874, 881–883.)

uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. . . . With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.' " (*Falsetta, supra*, at pp. 917–918, italics omitted.) Thus, *Falsetta* concluded, "the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from [a] due process challenge." (*Falsetta, supra*, at p. 917.) Likewise, the rejection of challenges to the federal rules allowing sexual misconduct evidence is grounded on the protections of rule 403 of the Federal Rules of Evidence (28 U.S.C.), the federal counterpart to section 352. (*LeMay, supra*, 260 F.3d at p. 1026.)

Thus, any due process assertion necessarily depends on whether the trial court sufficiently and properly evaluated the proffered evidence under section 352. (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104 [121 Cal.Rptr.3d 787].) Our reading of *Falsetta* is that the tendency of sexual misconduct evidence to corroborate victims in what might otherwise be credibility contests is but one reason such evidence generally has probative value. (See *LeMay, supra*, 260 F.3d at p. 1028 [evidence of prior molestations was probative, in part, because it bolstered the credibility of the victims and rebutted the defendant's argument that there was no corroboration of the charged crimes].) However, "[t]he weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules . . ." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314 [97 Cal.Rptr.2d 727]), and the existence of a credibility contest is not a constitutional prerequisite to admission of uncharged sexual misconduct evidence. On its face, section 1108 passes constitutional muster. As applied, there is no due process violation where the court engages in the safeguard provided by a section 352 analysis. (See *Dejourney, supra*, 192 Cal.App.4th at pp. 1104–1106.)

Here, the trial court carefully balanced the probative value against the section 352 counterweights, including the potential for undue prejudice, consumption of time and the potential for misleading or confusing the jury. Indeed, because of the potential danger of confusing the jury and consuming an undue amount of time, the court excluded evidence of multiple acts of sexual misconduct involving defendant's other daughter, many of which seemed similar in description to the conduct depicted in the video.

The single molestation of K.H. was highly probative in that it tended to show that defendant is predisposed to engage in the charged conduct. The

molestation tended to show that defendant has a sexual attraction to young girls. That sexual attraction supplied a motive for his possession of the child pornography and thereby tended to establish his knowing possession of the video file. Although similarity is not required for admissibility under section 1108 (*Loy, supra*, 52 Cal.4th at p. 63), we note that the crimes here were similar in that K.H. and the girl in the video were of the same gender. They were also both young. While not the exact same age, they were both substantially younger than age 18. Thus, the probative value here was enhanced by these similarities. (See *Escudero, supra*, 183 Cal.App.4th at pp. 307, 311–312 [trial court did not abuse its discretion by allowing evidence of prior sexual assaults on two adult women under § 1108 in a prosecution for lewd and lascivious act against a seven-year-old girl].) The molestation of K.H. was not remote. Indeed, defendant had only been released from prison for approximately a year when a surprise parole search revealed his possession of the child pornography.

On the prejudice side of the section 352 balance, the single act of molestation against K.H. did not involve the sexual acts depicted in the "Puebla Mexicana Girl" video. Thus, the single, relatively brief act of touching K.H. was not inflammatory compared to the acts depicted in the video. Also, we note that the fact defendant was punished as a result of the molestation of K.H. diminished the danger of undue prejudice (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [27 Cal.Rptr.2d 646, 867 P.2d 757]; *Loy, supra*, 52 Cal.4th at p. 60), as did the fact that K.H. was an adult when she testified. The evidence was presented quickly and amounted to only 14 pages of transcript. (See *Loy, supra*, 52 Cal.4th at p. 61.) We also observe that the jury was properly instructed on how to use this evidence and on the presumption of innocence and the burden of proof. (See *Falsetta, supra*, 21 Cal.4th at p. 920.) We conclude that the admission of the molest evidence did not render defendant's trial fundamentally unfair. Defendant's due process rights were not violated.

As for defendant's equal protection claim, he simply states that he was denied equal protection of the laws. He offers no reasoned argument or citation to authority. The point is therefore forfeited. (*People v. Earp* (1999) 20 Cal.4th 826, 881 [85 Cal.Rptr.2d 857, 978 P.2d 15] [constitutional contentions forfeited]; *People v. Bonin* (1989) 47 Cal.3d 808, 857, fn. 6 [254 Cal.Rptr. 298, 765 P.2d 460] [equal protection contention forfeited by failure to provide adequate argument].) In any event, this court has previously rejected this claim in *Fitch, supra*, 55 Cal.App.4th at pages 184–185, and we decline to reconsider that decision. (See *People v. Waples* (2000) 79 Cal.App.4th 1389, 1394–1395 [95 Cal.Rptr.2d 45].)

## DISPOSITION

The judgment is modified to award defendant 711 days of presentence custody credits. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and to forward a certified copy to the Department of Corrections and Rehabilitation.

Raye, P. J., and Butz, J., concurred.

A petition for a rehearing was denied February 8, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 28, 2012, S200273.