Filed 9/16/13  P. v. Palomo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ROBERT PALOMO,<br><br>　　Defendant and Appellant. | 2d Crim. No. B238060<br>(Super. Ct. No. F461608)<br>(San Luis Obispo County) |

Robert Palomo appeals a judgment following conviction of three counts of oral copulation of a child less than 10 years old, and three counts of committing a lewd act on a child, with a finding that he committed the criminal offenses on more than one victim. (Pen. Code, §§ 288.7, subd. (b), 288, subd. (a), 667.61, subd. (e).)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

In 2011, the San Luis Obispo County prosecutor filed a second amended information charging Palomo with three counts of child molestation committed against I. Doe in 2007, two counts of child molestation committed against Elizabeth Doe in 2010, and one count of child molestation committed against Emily Doe in 2010.  At trial, the prosecutor also presented evidence of an uncharged act of child molestation committed in 1995 against C.O.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

*Sexual Offenses Committed Against I. Doe*

*(§§ 288.7, subd. (b) & 288, subd. (a).)*

Palomo is the father of I. Doe, and T.C. is her mother. In 2007, I. lived with her mother but not her father. When I. was five or six years old, Palomo touched her "private part" with his "private" as well as his hand. He also placed his "private" in her mouth. I. felt "uncomfortable" and thought that Palomo's acts were "gross." I. also testified that when she was five years old, another man in the household touched her "private part."

When interviewed in 2007, I. stated that her father touched her inappropriately. On March 2, 2011, I. was interviewed again. She stated that her father put his "private" in her mouth when she was in her bedroom during a "time-out." I. described another occasion where Palomo placed his mouth on her genitals. She also stated that Palomo's brother Benjamin touched her inappropriately. The interviews of I. were recorded and at trial, played for the jury.

A physical examination of I. performed on April 30, 2007, revealed inflammation of her genitals consistent with sexual abuse. A DNA analysis performed in 2011 on secretions deposited on I.'s underwear revealed semen consistent with the DNA profile of Palomo's brother Benjamin.

*Sexual Offenses Committed Against Elizabeth and Emily Doe*

*(§§ 288.7, subd. (b) [Elizabeth only] & 288, subd. (a).)*

Elizabeth and Emily Doe are sisters who live with their great aunt and adoptive mother Debbie M. The M. family and Palomo's family became close friends. Occasionally, Palomo, his wife Anita, and their children would spend the night at the M. home in Oceano when Debbie M. was away.

On one occasion when Emily was 9 or 10 years old, the Palomo family was staying in the M. home. Emily awoke when Palomo "was sticking his finger in [her] private." Emily "rolled over" to avoid him. Thereafter, she felt "uncomfortable" whenever Palomo was present.

During June 2-4, 2010, the Palomo family again stayed in the M. home when Debbie M. attended an out-of-town graduation ceremony. While five-year-old Elizabeth

was lying on Debbie M.'s bed, Palomo removed her underwear and "licked [her] private." After the Palomo family left and Debbie M. returned, Elizabeth informed her that Palomo "licked her pee-pee." Debbie M. then informed her social services counselor who reported the incident to law enforcement.

Approximately one week following Elizabeth's complaint of molestation, Emily also revealed to a social worker that Palomo had molested her.

*1995 Molestation of C.O.*

In 1995, the O. family lived in Santa Maria, including C.O., who was then three years old. Palomo, then 13 years old, lived in the neighborhood and played with the older O. children.

In May 1995, Mrs. O. entered the living room of her home and saw Palomo's hand inside C.O.'s pants, touching C.O.'s buttocks. Mrs. O. informed law enforcement and Palomo was arrested. After advisement and waiver of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Palomo stated that he "molested" C.O. as they played video games. He stated that he "just put his hand down her pants," because "it just came to his head." Later, in a juvenile adjudication hearing, Palomo admitted that he molested C.O.

*Palomo's Trial Testimony*

Palomo testified at trial and denied molesting any of the children, including his daughter. Concerning C.O, he explained that he "reached [his] hand inside" her sweatpants to remove "a foxtail." Palomo denied that he admitted to law enforcement that he molested C.O.

Palomo and his wife testified and accounted for their whereabouts and activities during the June 2010 weekend that Elizabeth had been molested.

Palomo also testified that he had used methamphetamine and marijuana for many years. He confirmed that he behaved in inappropriate ways when he was under the influence of drugs.

*Conviction and Sentencing*

The jury convicted Palomo of three counts of oral copulation of a child less than 10 years old, and three counts of committing a lewd act on a child. (§§ 288.7, subd.

3

(b), 288, subd. (a).) It also found that he committed the criminal offenses on more than one victim, pursuant to section 667.61, subdivision (e). The trial court sentenced Palomo to four consecutive 15-year-to-life terms for counts 1, 3, 5 and 6, and stayed sentence for counts 2 and 4 pursuant to section 654. It imposed a $10,000 restitution fine and a $10,000 parole revocation restitution fine (stayed), ordered victim restitution, and awarded Palomo 611 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1202.4, subd. (f).)

Palomo appeals and contends that the trial court erred by: 1) not dismissing the counts regarding I. due to pre-accusation delay; 2) improperly permitting evidence of the 1995 molestation; 3) instructing with CALCRIM No. 1191; and 4) instructing with CALCRIM Nos. 1190 and 301.

## DISCUSSION

### I.

Palomo argues that the trial court erred by not dismissing the three counts involving I. due to pre-accusation delay. He contends that witnesses, including I.'s mother, T.C., were unavailable at the 2011 trial. Palomo asserts that the pre-accusation delay denied him due process of law pursuant to the federal and California Constitutions.

Prior to trial, Palomo sought to dismiss the counts involving I.'s 2007 molestation because T.C. could not be located.[2] Palomo asserted that T.C. ("the lynchpin" of his defense) would have testified that I. reported that Benjamin Palomo molested her, and that drug users and parolees frequented the C. home. The prosecutor responded that he received corroboration of I.'s allegations in 2010 when Elizabeth and Emily complained of molestation, and I. was later reinterviewed. Also in 2011, DNA analysis revealed that Benjamin Palomo was the likely donor of secretions deposited on I.'s underwear. The prosecutor stated that prior to 2010-2011, he could not establish beyond a reasonable doubt that Palomo molested I. The trial court denied the motion to dismiss, stating that I. accused Palomo *and* his brother of molesting her, and that defense claims as to missing witnesses were speculative.

---

[2] An arrest warrant existed for T.C.'s arrest. The trial court found that she likely made herself unavailable by evading service.

4

Constitutional principles of due process of law safeguard a defendant's interest in fair adjudication by preventing unjustified charging delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss of material physical evidence. (*People v. Abel* (2012) 53 Cal.4th 891, 908.) A defendant seeking relief for undue delay in filing charges must establish prejudice from the delay, such as the loss of material witnesses or evidence, or fading memories. (*Ibid.*) We do not presume prejudice from precharging delay. (*Id.* at pp. 908-909.) If the defendant establishes prejudice, the prosecution may offer justification for the delay. (*Id.* at p. 909.) The court then balances the harm to defendant against the justification for the delay. (*Ibid.*) If defendant does not establish prejudice, the court need not determine whether the delay was justified. (*Ibid.*) We review the court's ruling regarding charging delay for an abuse of discretion. (*People v. Cowan* (2010) 50 Cal.4th 401, 431.)

The trial court did not abuse its discretion because Palomo did not establish sufficient prejudice from the four-year delay. Evidence from other trial witnesses established that I. initially accused only Benjamin Palomo of molesting her. During her later interview with a social worker, she also implicated her father. Claims of prejudice from other unavailable witnesses were speculative and Palomo did not suggest what testimony they might provide. Indeed, the prosecutor stated that he intended to impeach T.C. with a statement that T.C. "wouldn't be surprised if [Palomo] did molest [I.] if he was using methamphetamine." Moreover, the prosecutor explained the delay as necessary to obtain additional evidence to prove the matter beyond a reasonable doubt. "A court should not second-guess the prosecution's decision regarding whether sufficient evidence exists to warrant bringing charges." (*People v. Nelson* (2008) 43 Cal.4th 1242, 1256.) Thus even if Palomo established minimal prejudice, the prosecutor presented sufficient justification for the delay. (*Ibid.* [further investigation may provide strong justification for delay].)

*II.*

Palomo contends that the trial court improperly admitted evidence of his 1995 sexual offense against C.O. because the prior offense was remote in time, too dissimilar from the charged offenses, and inflammatory. (Evid. Code, §§ 1108, subd. (a) ["In a

5

criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352"]; 1101, subd. (b), 352.)[3] He argues that admission of the evidence denied him due process of law pursuant to the federal and California Constitutions. Palomo also claims that section 1108 is unconstitutional, facially and as applied, asserting that the court did not perform a sufficient section 352 analysis.

In exercising its discretion to admit evidence of a prior sexual offense pursuant to sections 1108 and 352, the trial court must consider such factors as the nature, relevance, and possible remoteness of the prior offense; the degree of certainty of its commission; the likelihood of confusing, misleading, or distracting jurors from their main inquiry; similarity to the charged offenses; any likely prejudicial effect upon the jurors; the burden on defendant to defend against the prior offense; and the availability of less prejudicial alternatives to its outright admission, such as defendant admitting that he committed the prior offense or the exclusion of irrelevant, inflammatory details regarding the prior offense. (*People v. Loy* (2011) 52 Cal.4th 46, 61.) Our Legislature has determined that prior sexual offense evidence is particularly probative, and there is a presumption in favor of its admission. (*Id.* at pp. 61-62.) We review the court's ruling pursuant to sections 352 and 1108 for an abuse of discretion. (*Id.* at p. 61.)

The trial court did not abuse its discretion in permitting evidence of the C.O. molestation because it was relevant to the credibility of the complaints of I., Elizabeth, and Emily that Palomo molested them. Section 1108 permits the factfinder to consider evidence of prior offenses for any relevant purpose, subject to the weighing process of section 352. (*People v. Loy*, *supra*, 52 Cal.4th 46, 63.) Palomo's defense concerned suggestions that the girls were mistaken or had been led by a social worker to accuse him.

The molestation of C.O. occurred 12 years before the molestation of I. Decisions have countenanced the admission of prior sex offenses that were similarly remote in time. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [12-year gap]; *People v. Branch*

---

[3] All statutory references in Parts II and III are to the Evidence Code.

(2001) 91 Cal.App.4th 274, 284-285 [30-year gap balanced out by substantial similarities between the prior and the charged offense].)

Moreover, the molestation of C.O. and Emily involved similar acts of touching young girls under their clothing. C.O. and Emily also were unaware of Palomo's acts or sleeping at the time. The acts against I. and Elizabeth involved oral copulation. All of the children were in the general age range of three years old (C.O.) to nine years old (Emily) at the time of the acts.

Importantly, the 12-year time difference between the molestation of C.O. and the M. family victims permits the reasonable inference that Palomo engaged in molesting young girls from his adolescence continuing into young adulthood. Although Palomo grew older, the age of his victims remained nearly the same.

Palomo's reliance on *People v. Harris* (1998) 60 Cal.App.4th 727 does not assist him. There, the prior offense was a violent sex offense and evidence of it was "inflammatory *in the extreme*." (*Id.* at p. 738.) The charged sexual offenses were not forcible but involved breaches of trust. (*Ibid.*) These circumstances do not exist here. (*People v. Loy*, *supra*, 52 Cal.4th 46, 64 [distinguishing *Harris*].)

The jury also was not likely to convict Palomo of the charged crimes to punish him for the crime against C.O. He admitted molesting C.O. in a juvenile adjudication hearing and his commission of that crime was certain and established. (*People v. Loy*, *supra*, 52 Cal.4th 46, 60-61.) He "bore no new burden of defending against the [prior] charges." (*Id.* at p. 61.)

In *People v. Falsetta* (1999) 21 Cal.4th 903, 916-922, our Supreme Court rejected a due process challenge to section 1108. In *People v. Loy*, *supra*, 52 Cal.4th 46, 60, our Supreme Court declined to reconsider its holding in *Falsetta*. (*People v. Holford* (2012) 203 Cal.App.4th 155, 183.) We are bound by these decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Moreover, the trial court did not abuse its discretion in admitting evidence of the molestation of C.O. following the arguments of counsel and application of the weighing process and evidentiary considerations of section

7

352.  Thus, as applied to Palomo, evidence of the earlier molestation did not impair his constitutional rights to a fair trial and to due process of law.

*III.*

Palomo argues that the trial court erred by instructing with CALCRIM No. 1191 ("Evidence of Uncharged Sex Offense"), asserting that the instruction is unconstitutional.  He concedes that our Supreme Court held that a predecessor instruction (CALJIC No. 2.50.01) is constitutional, but raises the constitutionality argument to preserve the point for federal court review.  (*People v. Reliford* (2003) 29 Cal.4th 1007, 1011-1016 [CALJIC No. 2.50.01 is a correct statement of the law].)

*People v. Reliford*, *supra*, 29 Cal.4th 1007, considered an instruction similar to CALCRIM No. 1191, and concluded that it:  properly reflected the law set forth in section 1108, permitted the factfinder to consider prior sex offenses to prove criminal disposition, allowed for permissible and appropriate inferences, and did not violate due process of law. (*Reliford*, at pp. 1011-1016.)  Our Supreme Court later considered a different version of CALJIC No. 2.50.01, and concluded that instruction also was constitutional, relying upon *Reliford*.  (*People v. Loy*, *supra*, 52 Cal.4th 46, 71-76.)  We are bound by the decisions of our Supreme Court.  (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d 450, 455.) Accordingly, we reject Palomo's contention.

*IV.*

Palomo contends that the trial court erred by instructing with CALCRIM No. 1190 ("Other Evidence Not Required to Support Testimony in Sex Offense Case") because it is a pinpoint instruction on a subject already addressed by the neutral CALCRIM No. 301 ("Single Witness's Testimony").  He asserts that CALCRIM No. 1190 improperly lightened the prosecution's burden of proof and constitutes reversible error.

The trial court instructed with CALCRIM No. 1190 that, "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."  It also instructed with CALCRIM No. 301 that, "The testimony of only one witness can prove any fact.  Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence."

8

In *People v. Gammage* (1992) 2 Cal.4th 693, 700, our Supreme Court concluded that the predecessor versions of CALCRIM No. 1190 (CALJIC No. 10.60) and CALCRIM No. 301 (CALJIC No. 2.27) "considered separately, correctly state the law." Although the two instructions "overlap to some extent, each has a different focus." (*Ibid.*) The former version of CALCRIM No. 301 concerns the evaluation of a fact proved solely by the testimony of a single witness. (*Ibid.*) The former version of CALCRIM No. 1190 declares a rule of substantive law, that the testimony of the complaining witness need not be corroborated. (*Id.* at pp. 700-701.) *Gammage* decided that the instructions in combination did not create a preferential credibility standard for the complaining witness in a sexual assault prosecution. (*Id.* at p. 701.) "Neither [instruction] eviscerates or modifies the other. . . . The instructions in combination are no less correct, and no less fair to both sides, than either is individually." (*Ibid.*) *Gammage* also rejected the argument that jurors are generally aware that there is no legal requirement of corroboration. (*Ibid.* ["[T]here remains a continuing vitality in instructing juries that there is no legal requirement of corroboration"].)

Accordingly, we reject Palomo's contention. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d 450, 455.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

9

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____

Julie Sullwold, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Zee Rodriguez, Deputy Attorney General, for Plaintiff and Respondent.