Filed 10/5/15  P. v. Chilton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>SHARAYE CHILTON,<br><br>      Defendant and Appellant. | C075220<br><br>(Super. Ct. No. 13F00660) |

Convicted by jury of attempted first degree burglary, defendant Sharaye Chilton contends the trial court prejudicially violated his state and federal constitutional rights to confrontation by admitting a nontestifying codefendant's statement against all defendants, and the statement was not admissible under any hearsay exception because it was inherently unreliable.  We conclude (1) defendant's right to confrontation was not infringed because the statement was not testimonial, (2) defendant's unreliability

1

contention is forfeited, and (3) even if not forfeited, the contention does not show grounds for reversal. We affirm the judgment.

FACTS AND PROCEEDINGS

At around 9:00 a.m. on January 30, 2013, Eleanor Taylor, alone at home on Hamsted Drive in Galt, heard someone ring the doorbell and knock on her front door. She had not been expecting visitors and did not want anyone to know she was home. Instead of answering the door, she peeked through her dining room blinds and saw a white car parked in the street in front of the house. Going to the living room to get a better look, she saw three young African-American men in the car. She had not seen them at her front door. Because they had been there for a while, she was "petrified" and called 911 from her cell phone. (The recording of the 911 call was played for the jury, and a transcript was provided but not admitted in evidence.)

As Taylor recalled, while she spoke to the 911 dispatcher, two men--the driver and the person who had been sitting in the driver's side rear seat--got out of the car and came back to her front door, while the third man remained in the car. She told the dispatcher that she was sure the men at the door would try to break in because they had pulled up their hoods as they approached the house. Then she saw the bottom of the front door "cave in." She yelled out, "Hey" and heard footsteps as the two men ran. She tried to get their license plate number, but was only able to get a partial number before the car sped off. She gave the dispatcher that number and said the car was a white four-door model.

Galt Police Officer Keith Russell responded to Taylor's home. Visibly frightened, she told him that the suspects were three African-American men, one with his hair in dreadlocks.

The front door was a double wooden door that opened into the house; the left side was secured by a metal security rod that locked into the floor, and the right side was the main front door. According to Officer Russell's and Taylor's testimony, the base of the

2

door and a plastic switch that secured the metal security rod were damaged. When Officer Russell pushed on the doors, they bowed inward; he estimated that he could push them approximately one foot into the home. Officer Russell acknowledged on cross-examination that he did not see any footprints on the door, anything broken on the exterior, or any evidence the door had been kicked, and the photographs he took with his cell phone at the time also failed to show such evidence.

Officer James Merchant and Detective Jarrett Tonn, on patrol in a marked patrol car, received a call about a burglary in progress. Learning that the suspect vehicle had left the scene, they waited on a northbound on-ramp to Highway 99. They saw a car matching the suspect vehicle's description enter Highway 99 and proceed northbound, then followed it. Officer Merchant saw three men inside who matched the suspects' descriptions.

The car got off the freeway at the Sheldon Road exit and sped through a residential neighborhood, pursued by Officer Merchant and Detective Tonn, together with Sacramento County sheriff's deputies and Elk Grove police officers. When the suspects' car came to a halt at a dead end, Officer Merchant tried to make a traffic stop; the driver (codefendant Moore) and front-seat passenger (codefendant Conley) jumped out and ran away, but were soon caught. The back-seat passenger (defendant) remained in the car.

Officer Russell took Taylor to south Sacramento for an in-field identification. Because Taylor was still frightened, Detective Jose Ramirez, whose car had tinted windows, took her to the show-up site. Taylor tentatively identified one of the codefendants by his clothing, then recognized defendant by his hair style; she also identified the suspects' car.

Taylor testified that she identified codefendant Moore (the driver) during the show-up as the person who initially stayed in the car when it was parked in front of her

house.  She identified codefendant Conley as the person who got out from the front seat, and defendant as the person who got out from the rear seat.

Taylor testified that she did not know which of the defendants touched her front door.  Officer Russell testified, however, that Taylor told him the person with dreadlocks (defendant) pushed on her door.

Defendant was charged by an amended information with one count of first degree burglary (Pen. Code, § 459; undesignated statutory references are to the Penal Code), along with codefendants D'Monte Conley (aka Monta Brown) and Darilyn Moore. Codefendant Moore was also charged with reckless evasion of a peace officer (Veh. Code, § 2800.2, subd. (a); count 2) and misdemeanor resisting arrest (§ 148, subd. (a)(1); count 3).  Moore and Conley are not parties to this appeal.

A.    The Recorded Conversation

The single issue on appeal concerns the admissibility of a recorded conversation defendant D'Monte Conley had with an unidentified woman while Conley was in jail on January 31, 2013, the day following his arrest.

According to the transcript, Conley identifies himself as "Monta Brown," then says in part:

"(unintelligible)  Elk Grove Police, we took off, man boom, and like three of 'em are like boom.  (Yeah they were like), 'Well stop bro,' woot, woot.  So about to--he's about to stop man.  So he like, 'Man fuck that bro,' woot, woot, 'Bro, it's too late bro. It's too late bro,' woot, woot, 'Fucked up.  Too late.'  Waa, this nigga was on after that. And so I'm like, 'Shit.'  Worst come to worst (are you) fittin' to get away or fittin' to get caught?  You feel me?  I'm not about to give up so fast (unintelligible).  You feel me? I--I was lookin' at him like, '(Wait) bro.'

4

" . . . And then--then (unintelligible) we should never did that (on some ass) high speed 'cause it would've just pulled over and they probably would've been like, 'Whoopty whoop,' this and a little hiccup.

"  [¶]  . . .  [¶]

"Uh, conspiracy, burglary.  Mmm.  And uh, reckless (drivin') and shit but they just (unintelligible) 'cause I wasn't drivin'.  Feel me?  (Unintelligible) resistin' arrest for runnin.'  Hey that shit should--(oh bro) that should get dropped.  Did you hear me?  (Good?)  Oh yeah 'cause nigga (unintelligible) we never did shit we even like (unintelligible) we never opened a window, we never had no tools, we never did shit (unintelligible) *the only thing we did was like shoulder to door a little bit* n like boom (unintelligible) and then we rolled and that was it.  So that's what I am saying if they investigate it at the end of the day if they do investigate it and there's no evidence, no (unintelligible).  It ain't like (she seen us) (unintelligible) like (she seen us) tryin' to, you feel me, (unintelligible) so we gonna just--we gonna just do this (unintelligible) but the lady sayin' (she seen it out in front of her house) (unintelligible).  You feel me?  So it should get dropped to at least uh, trespassin.'  (Unintelligible) ain't really nothin' that they can really put it on to stick like that hard on me.  Like nothin' for real.  You feel me? (That's what I'm sayin') like the shit is so fuckin' (goofy).  The only reason why I look so--look so--look so wrong on the--'cause we picked the (unintelligible).  That's why I look so (unintelligible).  You feel me?  (Unintelligible) we still had weed on us.  So yeah we had weed on us.  You feel me?  (Then we would've) went to jail for our weed.  Feel me?  (Hit the gas), you feel me?  No bro.  I--I know it ain't gonna--I know it ain't gonna stick though bro.  I know--I know it ain't gonna stick for so long.  It just gonna take some time.  You feel me?  But man, nigga better off findin' (shit) on the streets.  Then nigga has a better chance of beatin' that little . . . punk ass shit."  (Italics added.)

On the recording, Conley can clearly be heard saying, at the point we have italicized above, that "little bro" "shouldered" the door, not that "we" did it.  Since the

5

evidence indicated that codefendant Moore did not leave the car, the jury could have understood "little bro" only to mean defendant. In argument, as we discuss further below, Conley's counsel quoted the recording and urged the jury to disregard the transcript on this point.

B.    Proceedings In Limine

Prior to trial, codefendant Conley moved in limine to exclude any "unMirandized spontaneous statements" made by him. The prosecutor stated that she planned to introduce a jail phone call made by Conley because "[h]e puts himself there. He puts himself leaning against the door. The chase . . . ."

Codefendant Moore's counsel said this evidence would "bring up an *Aranda*/*Bruton* issue." (*People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*); *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476] (*Bruton*).) Defendant's counsel joined in the motion to exclude the evidence.

The prosecutor said Conley did not name the other defendants, but said "we" several times during the call. The trial court asked the prosecutor to leave the recording and transcript of the call with the court for review.

The trial court asked the prosecutor to whom Conley was speaking during the jail visit that resulted in the recording. The prosecutor said she did not know if it was a girlfriend or a relative, but it was definitely a female.

The trial court stated that the People were seeking to introduce the evidence under Evidence Code section 1230 as a declaration against interest. Because the court's computer would not play the prosecutor's CD, the court intended to rule based on the transcript, which it had reviewed and "which I assume is reasonably accurate." Defense counsel did not object to the court doing so.

The trial court asked: "[E]verybody is objecting to . . . the use of the word we, right?" Defendant's counsel said: "Correct."

6

Moore's counsel argued that under *Aranda/Bruton* and "the *Lilly* case" (*Lilly v. Virginia* (1999) 527 U.S. 116 [144 L.Ed.2d 117] (*Lilly*)), even if Conley's statement was a declaration against interest, the confrontation clause (U.S. Const., 6th Amend.) barred its use against her client if it could not be redacted to eliminate any reference to him. Defendant's counsel did not offer any separate argument, thus presumably adopting the argument of Moore's counsel as his own. No counsel argued that the statement was not sufficiently trustworthy to be admissible.

The trial court ruled (1) the statement met all the tests for admission as a declaration against interest, notwithstanding the *Aranda/Bruton* rule and (2) the confrontation clause did not apply because the statement was not testimonial. (*Davis v. Washington* (2006) 547 U.S. 813 [165 L.Ed.2d 224] (*Davis*); *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177] (*Crawford*).) The court found that *Lilly, supra*, 527 U.S. 116 [144 L.Ed.2d 117] was no longer good law on this issue because it relied on *Ohio v. Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597] (*Roberts*), which had been "superseded" by *Crawford* and *Davis*.

C.    Proceedings at Trial

After a sheriff's deputy assigned to the Sacramento County main jail authenticated the recording of Conley's phone call, the recording was played for the jury, and the jury received copies of the transcript.

Defense counsel renewed their objection to the admission of the recording under the Fifth, Sixth, and Fourteenth Amendments and *Aranda/Bruton*. They did not make any argument based on discrepancies between the transcript and the recording.

The trial court noted that since it had already ruled, "this was simply an opportunity for you to say more things on the record for whatever possible purpose it could have."

Defendant and the codefendants did not testify.

7

Defendant's counsel asserted there was no evidence that any defendant penetrated into Taylor's house or intended to commit theft. Defendant's counsel did not discuss Conley's phone call.

Conley's counsel used the phone call to argue for his client's innocence--and, by implication, to point a finger at defendant. According to counsel, Conley did not say (as shown in the transcript): "[W]e pushed on the door[;] we were shouldering the door." "*What it actually says is little bro, either like or lightweight, shouldered the door little bit. That was it. Not [']we were up there.['] [¶] He says little bro. Little bro did this, lightweight or like shouldered the door, and that was it.* Not that I did something. Not that I was standing next to him. Just this is what happened. [¶] Listen to the tape because the transcript is just wrong. *He's not saying he did anything. He's saying someone else did something.*" (Italics added.)

On this point, we note that, notwithstanding counsel's argument, the transcript admitted into evidence at trial, which was given to the jury without objection as to its accuracy, reads at this point: "[T]he only thing *we* did was like shoulder to door a little bit n like boom. . . ." But we note further that the actual recording of the conversation also was admitted into evidence and played for the jury. Whether the jury concluded that Conley said "we" or "lil bro" at this point in the conversation does not affect our analysis of the issue before us.

The prosecutor in rebuttal asserted ambiguously: "[W]e have her [Taylor] saying [defendant]'s leaning into the door and Conley gives a statement saying that he's [*sic*] shouldering the door."

The jury returned verdicts finding all defendants not guilty of first degree burglary but guilty of attempted first degree burglary.

DISCUSSION

In his opening brief, defendant contends the trial court violated his state and federal constitutional right to confrontation by admitting the Conley statement against all defendants, and that the error was not harmless beyond a reasonable doubt. He also contends the court erred by admitting the statement as a declaration against interest because it lacked sufficient indicia of reliability. In his reply brief, defendant apparently abandons his confrontation argument and focuses on the alleged unreliability of the Conley statement. We conclude defendant has shown no error.

I

*The Confrontation Clause Does Not Apply*

Under the rule stated as a matter of federal constitutional law in *Bruton, supra*, 391 U.S. at page 137 [20 L.Ed.2d at p. 485] and as a matter of "judicially declared rules of practice" in *Aranda, supra*, 63 Cal.2d at pages 530-531 (abrogated by the "Truth in Evidence Law" (Cal. Const., art. I, § 28, subd. (d)), so far as it excluded relevant evidence admissible under the federal Constitution (*People v. Fletcher* (1996) 13 Cal.4th 451, 465), the use of a nontestifying codefendant's hearsay statement implicating the defendant in a joint trial violated the defendant's Sixth Amendment right to confrontation unless the statement could be redacted to remove any reference to the defendant's existence. (*Richardson v. Marsh* (1987) 481 U.S. 200, 211 [95 L.Ed.2d 176, 188] (*Richardson*).) *Bruton* involved a statement that was "clearly inadmissible against [the nondeclarant defendant] under traditional rules of evidence," and the court expressly declined to decide whether a statement that fell within a hearsay exception was subject to exclusion on confrontation clause grounds. (*Bruton, supra*, 391 U.S. at p. 128, fn. 3 [20 L.Ed.2d at pp. 480-481, fn. 3].)

But in *Crawford, supra*, 541 U.S. 36 [158 L.Ed.2d 177], and *Davis, supra*, 547 U.S. 813 [165 L.Ed.2d 224], the United States Supreme Court significantly altered

9

confrontation clause analysis. In consequence, the "*Bruton /Richardson* framework" (*People v. Arceo* (2011) 195 Cal.App.4th 556, 574 (*Arceo*)) no longer stretches as far as before, and does not reach the facts of the present case.

*Crawford* held, based on the common law history and purpose of the confrontation clause, that the clause (1) applies only to out-of-court statements that are "testimonial," i.e., offering "testimony" against a defendant (whether or not in a court proceeding), but (2) strictly requires the exclusion of such statements, despite any applicable hearsay exception, unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. (*Crawford, supra*, 541 U.S. at pp. 51-54, 59 [158 L.Ed.2d at pp. 192-194, 197].) The court overruled *Roberts, supra*, 448 U.S. 56 [65 L.Ed.2d 597] (hearsay evidence admissible if within a " 'firmly rooted hearsay exception' " or bearing " 'particularized guarantees of trustworthiness' ") because the *Roberts* analysis (1) failed to distinguish between testimonial and nontestimonial hearsay and (2) allowed the admission of "reliable" testimonial hearsay that violated the defendant's right to confrontation. (*Crawford, supra*, 541 U.S. at p. 60 [158 L.Ed.2d at p. 198].)

*Davis,* in turn, held that a statement made to law enforcement during the investigation of a crime is not testimonial if "its primary purpose was to enable police assistance to meet an ongoing emergency," rather than to "establish[] the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." (*Davis, supra*, 547 U.S. at pp. 826-828 [165 L.Ed.2d at p. 240].)

In light of *Crawford* and *Davis*, the California courts have consistently held that the admission of nontestimonial hearsay, even if erroneous, does not raise a federal constitutional issue. As we shall explain, the Conley statement was nontestimonial.

"[T]he erroneous admission of hearsay evidence alone does not establish a violation of the confrontation clause of the Sixth Amendment." (*People v. Page* (2008) 44 Cal.4th 1, 48 (citing *Crawford*).)

10

"Only the admission of testimonial hearsay statements [if the declarant is not unavailable or the defendant has not had a prior opportunity to cross-examine] violates the confrontation clause . . . . [Citation.] While the high court [in *Crawford*] declined to precisely define what constitutes a 'testimonial' statement, it held that, at a minimum, testimonial statements include 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations.' [Citation.] The court explained that the confrontation clause addressed the specific concern of '[a]n accuser who makes a formal statement to government officers' because that person 'bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.' [Citation.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 812-813; accord, *People v. Loy* (2011) 52 Cal.4th 46, 66-67 (*Loy*) [hearsay reporting accusation against defendant by alleged victim to friend during telephone call not testimonial, therefore *Watson* standard for harmless error applied]; see also *Arceo, supra*, 195 Cal.App.4th at p. 575; *People v. Cervantes* (2004) 118 Cal.App.4th 162, 171-173 (*Cervantes*).)

Conley's statement was not made during any sort of formal proceeding or police interrogation and did not offer testimony against defendant in any sense recognized by *Crawford* and its progeny. It was an informal account, evidently offered to a person he trusted and to whom he felt he could speak freely, that attempted to exonerate Conley and his codefendants or to admit only trivial offenses. Defendant does not argue on appeal that the statement was testimonial under *Crawford*. Thus, the admission of Conley's statement, even if erroneous, does not raise a constitutional issue.

In defendant's reply brief, he tacitly concedes that Conley's statement was not testimonial and acknowledges that current California law forecloses his confrontation clause argument. (*Loy, supra*, 52 Cal.4th at pp. 65-67; *Gutierrez, supra*, 45 Cal.4th at p. 812 (*Gutierrez*); *Arceo, supra*, 195 Cal.App.4th at pp. 574-575.) He asserts that he has raised the confrontation issue in his appellate briefs only "to preserve his rights to further review."

11

We note with disapproval that in his opening brief defendant failed to cite *Loy*, *Gutierrez*, or *Arceo*, all published long before he filed the brief, or to admit that current California law might pose any obstacle to his confrontation claim.

## II

### *The Statement's Reliability*

The trial court admitted the statement as a declaration against penal interest. (Evid. Code, § 1230.) Evidence Code section 1230 provides in part: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made . . . , so far subjected him to the risk of civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

The trial court found that the statement was against Conley's interest when he made it and that it was sufficiently reliable to warrant admission despite its hearsay character. In support of this finding, the court observed: (1) the declaration so far subjected Conley to the risk of criminal liability that a reasonable person in his position would not have made the statement unless he believed it true; (2) he acknowledged an equal level of culpability with the other participants; (3) he did not identify either of them, but simply said "we"; (4) he made the statement under noncoercive conditions, speaking to a friend or family member; (5) he did not appear to have the motivation of "getting out of anything" or of obtaining a deal from the police; (6) he showed a solid knowledge of the crime, laying out all the elements of what occurred; and (7) he recognized that it involved at least conspiracy, burglary, and reckless driving, that it was wrong, and that he would probably be convicted.

After the recording of the statement was played at trial, defense counsel renewed their *Aranda/Bruton* objection, but did not make any new argument based on the

discrepancies between the recording and the transcript--e.g., by pointing out that unlike the transcript, the recording showed that Conley's reference to "little bro" tended to identify defendant. And so far as the record shows, no defense counsel argued at any time that even if the statement appeared to be a declaration against penal interest, it lacked sufficient indicia of trustworthiness to be admissible under that hearsay exception.

Any motion to exclude evidence or objection to its admission must clearly state the specific ground of the objection or motion. The failure to make a timely and specific objection on a particular ground forfeits that objection on appeal. (Evid. Code, § 353; *People v. Holford* (2012) 203 Cal.App.4th 155, 168-169.)

Defense counsel objected to the admission of the Conley statement *only* on the basis of the *Aranda/Bruton* rule and the confrontation clause. Therefore, defendant's appellate contention that the statement was not sufficiently reliable to be admissible under Evidence Code section 1230 is forfeited.

But even if defendant's contention is not forfeited, it lacks merit.

In determining whether a statement is trustworthy and falls within the hearsay exception for declarations against interest, " '[t]he trial court must look to the totality of the circumstances in which the statement was made, whether the declarant spoke from personal knowledge, the possible motivation of the declarant, what was actually said by the declarant and anything else relevant to the inquiry. [Citations.]' " (*Cervantes, supra*, 118 Cal.App.4th at p. 175.) We review the trial court's finding de novo. (*Id.* at p. 174.)

As the trial court found, the circumstances in which the statement was made tended to show its trustworthiness because Conley was evidently speaking freely to a person he trusted and spoke from personal knowledge. His motivation was to explain what had happened and as far as possible to minimize its gravity. Nevertheless, he admitted to criminal conduct, even if he did not recognize that it amounted to at least attempted burglary. We conclude these findings were sufficient to establish the

13

trustworthiness of the statement for purposes of admissibility under Evidence Code section 1230 and, therefore, the trial court did not err in admitting the evidence.

DISPOSITION

The judgment is affirmed.


    HULL    , J.


We concur:


    RAYE    , P. J.


    MURRAY    , J.