Filed 4/2/25  P. v. Sherrell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BOBBY GENE SHERRELL,<br><br>    Defendant and Appellant. | F086283<br><br>(Super. Ct. No. BF173981A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Bobby Gene Sherrell was charged with first degree murder (Pen. Code,* § 187, subd. (a); count 1) of David Steelman and was alleged to have personally

---

\*      All further undesignated statutory references are to the Penal Code.

discharged a firearm causing death during the commission of the crime (§ 12022.53, subd. (d)).  A jury convicted appellant of the lesser included offense of second degree murder and found the firearm allegation true.  The court sentenced appellant to an indeterminate prison term of 15 years to life as to count 1, and, as to the firearm enhancement, the court imposed the lesser enhancement of 10 years (§ 12022.53, subd. (b)) for a total prison term of 15 years to life, plus 10 years.

Appellant appeals from the judgment of his conviction, arguing that the court prejudicially erred by admitting photographs of him handling and aiming a firearm a few days before the murder.

Finding no error, we affirm.

## FACTS

In the early morning hours of June 13, 2018, appellant was traveling by car with his wife, Delfina Longoria, and their friend, Matthew Davis.  The three had been using methamphetamine together and were out getting gas.  According to Davis, while driving after getting gas, they saw someone walking in their direction, and Longoria asked appellant if it was David Steelman, who all three of the vehicle occupants knew.  Davis thought it looked like him, but appellant was not sure.  Longoria told appellant, who was driving the vehicle, to turn the vehicle around; appellant did so, and "kind of crept up on" Steelman in an alleyway.  When Steelman saw the vehicle, he "rushed the car and started socking the window."  Steelman banged on the window twice, and appellant reached for a revolver that was in the door pocket and shot Steelman through the window, shattering it.  Davis saw Steelman grab his chest and fall.  No one in the vehicle called the police or paramedics, and appellant "sped out of there" without any vehicle malfunction.  Steelman was later found lying in the road, having died from the gunshot wound, which was later determined to be from a medium caliber bullet.  Davis called the police two days later, on June 15, 2018, and told them what happened.

2.

According to Davis, Steelman did not have a weapon on him, and law enforcement did not find any weapons near Steelman's body or the scene. Davis testified that he had heard Steelman had previously attacked appellant with a baseball bat. Davis further testified that a few days before the incident, he was present when appellant bought a .38 caliber revolver from a man named Jesse McDonald, and he, appellant, and Longoria went out to a dirt road to do some target practice with it on an old piece of a car a little after midnight. The People introduced several photographs of the three target shooting on that occasion.

Bobbie Jo Strickland, appellant's sister, testified that on June 15, 2018, appellant called her and said he needed help because he had murdered someone named "David" and wanted her to help him. He said something about having to do it in order to clear a debt he owed to someone named Paul Blanco, who provided him with the gun he used. Appellant said he picked up the victim under the pretense of doing methamphetamine together and then made him get out of the vehicle and shot him. Appellant told Strickland it was an "added bonus because the guy had slept with his wife while he was incarcerated."

Appellant testified in his defense. According to appellant, on the morning of the incident, while appellant was driving with Longoria and Davis, Longoria said to him, "Baby, isn't that him?" and he believed she was talking about an individual he was looking for earlier, so he stopped the car. He was about to turn the vehicle around, but Steelman ran up to the car and started hitting the window. Appellant "freaked out" because he heard something metallic hit the window, so he pulled out the gun and shot Steelman. He was afraid Steelman was going to break the window and stab appellant. He had tried to drive away but the car stalled; his car was hot-wired, so he had to rewire the car to get it to start. Appellant did not realize he had hit Steelman, he thought Steelman just ran away. After the incident, appellant threw the gun away and did not go

3.

to the police because he was scared he would get in trouble. He denied calling Strickland after the incident.

Appellant testified he bought the gun he used to shoot Steelman with Davis from Jesse McDonald. He knew but had never associated with Paul Blanco. He knew Steelman to be irrational, aggressive, and violent when using methamphetamine and that Steelman carried weapons "all the time," including bats, knives, screwdrivers, and lead pipes. Further, a few weeks before the incident, appellant had taken Longoria to Steelman's house for Longoria to pick up drugs and money in exchange for jewelry she had sold to Steelman. Longoria was banging on the door, and Steelman came to the door yelling and told appellant to get his "bitch in check." Longoria ran off, and appellant got into an altercation with Steelman and Steelman's friend. Appellant went on to testify he was scared of Steelman because he (Steelman) and Steelman's friend had jumped appellant and hit him over the head with a bat.

On cross-examination, appellant admitted he did not tell the police he had been shooting the murder weapon two or three days before the murder. He further admitted he lied repeatedly about whether he had seen Steelman on the day of the murder. He also stated he lied to the police about the previous altercation with Steelman because he told them Steelman had not hit him.

Also testifying on behalf of the defense was a forensic toxicologist who testified Steelman tested positive for methamphetamine at the time of his death. The results were 340 nanograms per milliliter, and results between 200 to 600 nanograms can result in violent and irrational behavior.

Appellant's ex-wife also testified on his behalf that Strickland was untruthful.

Sergeant Joe Saldana testified on behalf of the People in rebuttal that he had interviewed appellant on June 15, 2018. The interview was played for the jury. Appellant denied being involved in the shooting and stated he had not touched any bullets or guns.

4.

## DISCUSSION

### *Additional Background*

The People moved in limine to introduce, and the defense moved to exclude "on 352 grounds," photographs of appellant, Davis, and Longoria handling a firearm and engaging in target practice with it three days before the shooting, which were seized from a cell phone found in appellant's vehicle. The photographs depicted: (1) appellant shooting the firearm; (2) appellant loading the firearm; (3) Davis holding the firearm; (4) Longoria holding the firearm; and (5) Davis shooting the firearm. The People contended the photographs were relevant to show appellant had "the means and instrumentality to commit the shooting" and that the three were "close enough friends to pose with and shoot guns together." The People contended the photographs were not unduly prejudicial as the acts depicted were not "so naturally abhorrent or unnatural."

In taking up the motion, the court stated, "From our discussions in back, which were not on the record, it's my understanding that there may be some contention as to whether or not the defendant had access to firearms or used firearms or used a firearm in this case. [¶] That's part of the case so, therefore, the People would want to introduce this to show he did have access to firearms prior to the date in question … and knew how to use one."

In response, defense counsel stated, "I don't think there's a contention with respect to that issue. It is unduly prejudicial; so I would submit on that."

The court found the photographs were probative as to the issue of appellant's access to a firearm, that their introduction would not constitute an undue consumption of time, and their probative value outweighed any prejudicial effect.

Appellant now contends the court prejudicially erred by admitting the photographs because they were not relevant, unduly prejudicial, and cumulative of witness testimony. We disagree.

5.

***Relevant Legal Principles***

"No evidence is admissible except relevant evidence" (Evid. Code, § 350) and "[e]xcept as otherwise provided by statute, all relevant evidence is admissible" (*id*., § 351). " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id*., § 210.)

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Our high court has emphasized the word 'substantial' in section 352." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.) "Prejudice under Evidence Code section 352 refers to ' " 'evidence which uniquely tends to evoke an emotional bias against [the] defendant as an individual and which has very little effect on the issues.' " ' " (*People v. Thomas* (2023) 14 Cal.5th 327, 363.)

***Standard of Review***

Trial courts have broad discretion in determining the admissibility of evidence, and we review challenges to the admission of evidence for abuse of discretion. (*People v. Jackson* (2016) 1 Cal.5th 269, 320–321.) Under this standard, the court's ruling " ' "will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.) A decision to admit photographs will be upheld unless the prejudicial effect clearly outweighs their probative value. (*People v. Duff* (2014) 58 Cal.4th 527, 558.)

*Analysis*

### A.    The Court Did Not Abuse its Discretion by Admitting the Photographs

We conclude the court's finding the photographs were relevant was within its discretion. Appellant argues the photographs were not relevant because they "were probative only of matters that were not in dispute in this case," as he had "never claimed that he had no gun on the day Steelman was shot." We disagree.

Appellant's claim is not accurate. While appellant testified he shot Steelman during the defense's case, he told law enforcement that he had no involvement in the shooting and denied touching any bullets or firearms. Thus, at the time the in limine motion was brought, the photographs were certainly relevant to prove the disputed fact of appellant's access to a firearm. We reject appellant's claim that defense counsel's assertion that she "d[id not] think there's a contention with respect to that issue" made the fact undisputed given the state of the evidence, as well as, as respondent points out, the fact that appellant entered no formal stipulation to his possession of the firearm or participation in the shooting. The People were therefore entitled to put on evidence to prove appellant had access to or possessed a firearm. The photographs were also relevant to support the People's theory that appellant premeditated the murder. The prosecutor used the facts that appellant obtained a firearm and practiced with it only three days before the murder to support their theory of premeditation and deliberation.

In any event, appellant's eventual admission to shooting Steelman did not preclude the People from introducing the photographs to corroborate Davis's testimony, and we reject appellant's contention that the photographs should have been excluded as cumulative of testimony. "[P]hotographs corroborative of a witness's testimony need not be excluded as cumulative merely because the witness's testimony was not challenged. [Citation.] The state is not required to prove its case shorn of photographic evidence merely because the defendant agrees with a witness or stipulates to a fact." (*People v. Weaver* (2001) 26 Cal.4th 876, 933.)

Here, Davis, a key eyewitness to the crime, testified as to how appellant obtained the firearm and that he, appellant and Longoria practiced shooting with it days before the murder. As we have explained, this evidence was relevant to appellant's access to a firearm and whether he premeditated the murder. The photographs corroborated this testimony and was relevant to Davis's overall credibility. As such, they were well within the precepts set forth in Evidence Code section 210.[*]

We further conclude the court did not abuse its discretion by determining the probative value of the photographs was not substantially outweighed by substantial danger of undue prejudice. The potentially prejudicial effect of the photographs was low. We reject appellant's characterization of the photographs as improperly casting appellant as "ominous," "dangerous," "frightening," "ghoulish," or a figure from a "horror movie." We have examined the photocopies of the photographs contained in the record on appeal, and they are not inflammatory. They depict appellant, Davis, and Longoria handling and aiming a revolver for target practice, which is not an activity that would tend to cause unique emotional bias. They each are holding the firearm in front of him or her in a conventional aiming manner, toward some target off camera. Contrary to appellant's assertions, the poses they assumed were neutral rather than threatening or menacing. Appellant's claims appear to be premised primarily on the low light conditions of the photographs; he contends the individuals had "hardly visible features on blotched faces and outstretched arms, set against a pitch-black background in an unidentifiable location" and caused the jurors to "view[ appellant] and his friends in the distorted light of the photos." We are unconvinced. The jury would have understood that the photos may have been dark or grainy due to them being taken at night, and we do not believe the target

---

[*]    We recognize that this was not one of the trial court's stated reasons for finding the photographs relevant. However, "[w]e will affirm the trial court's evidentiary ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those expressly stated by the trial court." (*People v. Fruits* (2016) 247 Cal.App.4th 188, 205.)

8.

practice occurring at night adds substantive prejudice. When compared to the probative value stated above, we cannot say any prejudice "substantially" outweighed the probative value.

For these reasons, we conclude the court did not err by admitting the photographs.

## B. Any Error Was Harmless

Even if we were to find merit in appellant's argument, we would conclude any error was harmless. The erroneous admission of a photograph is reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Heard* (2003) 31 Cal.4th 946, 978.) Under the *Watson* standard, reversal is required only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

Here, as appellant acknowledges in arguing the photographs were not relevant, Davis testified to appellant participating in the activities depicted in the photographs, and appellant ultimately admitted to shooting Steelman. The conduct admitted by appellant himself was much more serious than the activities depicted in the photographs even considering any ominous undertones appellant suggests they had. Further, as we have mentioned, the prosecution exclusively relied on the photographs and the target practice incident to support its theory of premeditated and deliberate murder, and the jury expressly rejected that theory by finding appellant not guilty and instead convicting him of second degree murder. The jury also rejected the People's arguably stronger theory that appellant committed first degree murder by discharging the firearm from the vehicle. (CALCRIM No. 521.) The jury's verdict indicates they credited appellant's position that Steelman provoked the killing, undermining appellant's claim they were unduly prejudiced against him. Given the jury's verdict, as well as our view the photographs were simply not inflammatory, we cannot say the admission of the photographs improperly influenced the jury to find appellant guilty of second degree murder as opposed to finding him guilty of manslaughter, acquitting him, or being unable to return a

9.

verdict.  As such, we conclude there is not a reasonable probability appellant would have received a more favorable outcome had the photographs not been admitted.

## **DISPOSITION**

The judgment is affirmed.


                                                              DE SANTOS, J.

WE CONCUR:


MEEHAN, Acting P. J.


FAIN, J.*

---

\*       Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.